Opinion issued August 21, 2008















In The

Court of Appeals

For The

First District of Texas






NOS. 01-07-00686-CR, 01-07-00687-CR, 01-07-00688-CR

____________


PRECIOUS LAMONT HOWARD, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 268th District Court

Fort Bend County, Texas

Trial Court Cause Nos. 42232B, 42233B, 42234B 






MEMORANDUM OPINION

 A jury found appellant, Precious Lamont Howard, guilty of two separate
offenses of burglary of a habitation with intent to commit sexual assault (1) and one
offense of burglary of a habitation, attempting to commit assault or committing
assault. (2) After finding true the allegation in an enhancement paragraph that appellant
had a prior felony conviction, the trial court assessed his punishment at confinement
for sixty years in each case, with the sentences to run concurrently. Appellant
presents eleven issues for our review. In his eighth issue, appellant contends that the
evidence is legally and factually insufficient to support his convictions. In his fourth
issue, appellant contends that he was denied due course of law, due process, and a fair
trial under the Texas and United States Constitutions (3) as he was incompetent during
the trial on the merits. In his first through third issues, appellant contends that the
trial court, in the competency trial, erred in admitting a state hospital report, in
excluding defense evidence that appellant exhibited signs of mental illness "months
before the offenses," and in improperly charging the jury regarding the presumption
of competency and the burden of proof. In his sixth issue, appellant contends that the
trial court, in the trial on the merits, erred in denying his motion for mistrial based on
a juror's failure to divulge during jury selection that she knew an assistant district
attorney. In his ninth through eleventh issues, appellant contends that the trial court,
in the trial on the merits, erred in charging "the jury that the term mental disease or
defect does not include abnormality manifested only by repeated criminal or
otherwise antisocial conduct," in not charging the jury that "there was no presumption
of sanity," and in charging the jury that "voluntary intoxication is not a defense
because there was no evidence [that] appellant was intoxicated at the time of the
offense." In his fifth and seventh issues, appellant contends that the trial court, in the
trial on the merits, erred in admitting evidence from a State's psychologist regarding
the effects of narcotics on appellant and his admission to her during an interview
regarding his sanity. 

 We affirm.

Factual and Procedural Background

 At the trial on the merits, Stacey Winton testified that, in the early morning of
May 10, 2005, at the Richmond House Apartments, she heard a loud banging
emanating from the direction of her locked front door. She got out of bed, turned on
a light, and opened her bedroom door to check on the noise. When Winton opened
her bedroom door, she saw that appellant had kicked in her front door and was
standing shirtless inside of her apartment. Winton immediately started to scream and
to back away from appellant. Appellant grabbed Winton's arm and brushed her
breast, mumbling "come with me," as appellant attempted to back Winton towards
her bed. Winton quickly snatched up her cellular telephone, called for emergency
assistance, and left her apartment. Appellant followed her into the hallway and
subsequently kicked in the door of her neighbor, Dora Medina. Winton noted that
appellant had left his shirt on her desk in her bedroom and a crumpled dollar bill on
the floor of the dining room area. On cross-examination, Winton conceded that she
did not know if appellant was intoxicated during the incident. 

 Medina testified that, at approximately 1:30 a.m., she was awakened by a
scream. When she got out of bed and walked out of her bedroom, appellant kicked
in her front door and started touching her breast. Medina quickly left her apartment,
and appellant followed her into the complex's hallway. Medina told appellant that
a woman lived upstairs in the complex. Medina explained that she knew that Pam
Spillers lived upstairs and that her father, Fort Bend County Sheriff's Department
Sergeant L. Spillers, who had a gun, was a frequent guest. Appellant then said,
"woman upstairs" and walked away from Medina in order to climb the complex's
stairs. Medina noted that appellant's eyes were not normal, describing them as "golf-sized" and "white." On cross-examination, Medina admitted that she did not know
if appellant was intoxicated. 

 Pam Spillers testified that she lived on the floor above Medina and that her
father, a frequent overnight guest at her one-bedroom apartment, was sleeping on the
couch in her living room. After she heard loud sounds, she went to her father in the
living room. He had already awakened and had his gun ready. Appellant broke in
the locked door, (4) and Sergeant Spillers shot him. Appellant left the apartment and
went down the stairs.

 Fort Bend County Sheriff's Department Deputy M. Duran testified that, as he
was driving to the Richmond House Apartments, a motorist flagged him down and
told him that appellant was sitting on the steps at Calvary Episcopal Church. When
Duran arrived at the church, he saw that appellant, who was shirtless, was bleeding
from his chest. After Duran arrested appellant, paramedics took appellant to the
Oakbend Medical Center ("Oakbend") in order to treat his gunshot wound.

 Richmond Police Department Detective D. Butinski testified that appellant told
her "that he had gone knocking on some doors looking for a cigarette and a man
started shooting at him." When asked on cross-examination whether appellant was
"drunk or doped up or something," Butinski replied, "I figured [that] he was probably
either high or really intent on getting what he was looking for." 

 After the State had rested, appellant presented numerous witnesses in an
attempt to prove his affirmative defense of insanity. Helen Howard, appellant's
mother, Stanley Howard, appellant's father, Jeremy West, appellant's brother,
Carolyn Shepherd, appellant's aunt, Joe Neal, appellant's friend, and J.A. Hill, Jr.,
appellant's friend, all testified as to appellant's delusions about being God. Mrs.
Howard also recalled that, when appellant was in the hospital, after being shot,
appellant still told her that he was God and that a woman had touched his gunshot
wound and healed him. Appellant further told his mother that he would leave the
hospital by flying out of the window. Mrs. Howard conceded that appellant never
told her "what he did or what he saw when he got shot" and that appellant had a past
history of narcotics use.

 Lester Aldridge, appellant's friend, testified that appellant had told him that he
was God and normally had this delusion after consuming narcotics. Finally, Thomas
Gordon, Jr., appellant's cousin, testified that, on May 9, 2005, before appellant went
to the Richmond House Apartments, he and appellant had consumed several beers
together. He also stated that appellant had told him that he had taken one-half of a
pill of ecstasy and had consumed some cocaine. Gordon explained that appellant was
"delusional," asserting that he was God and spinning in circles, while proclaiming
that the world was his.

 After resting, appellant objected to the rebuttal testimony of Dr. Karen
Gollaher, a licensed forensic psychologist, regarding appellant's sanity at the time of
the offenses. Appellant argued that Gollaher, in previously interviewing appellant,
had violated his Fifth Amendment (5) right against self-incrimination because he did not
receive his proper legal warnings under Miranda (6) and Texas Code of Criminal
Procedure article 38.22. (7) Appellant also objected that Gollaher had violated his Sixth
Amendment (8) right to counsel. 

 At a hearing outside the presence of the jury, Dr. Gollaher conceded that she
did not notify appellant's trial counsel prior to her interviewing appellant. Also,
although she "talk[ed] about the Fifth Amendment right" and informed appellant that
his statements to her could be used at trial, she did not inform appellant of his legal
rights. Gollaher did, however, inform appellant that he had the right to consult his
attorney and that he could refuse to participate in the sanity evaluation. The trial
court overruled appellant's objections to Gollaher's testimony, concluding that she
could testify about the statements appellant made during his sanity evaluation, except
for those statements that related to the charged offenses.

 Dr. Gollaher then testified in front of the jury that she had met with appellant
three times in order to conduct appellant's sanity evaluation. She diagnosed appellant
with "polysubstance dependence," which is a "major psychiatric disorder" that refers
to a person who abuses more than one controlled substance. Gollaher explained that
her diagnosis was based on appellant's extensive use of "fry," which is marijuana
dipped in formaldehyde, marijuana, "PCP," "Tylenol 3 with codeine," ecstasy, and
cocaine, along with the presence of amphetamines, cocaine, and PCP as noted in
Oakbend's medical records. 

 Also, after interviewing appellant and several witnesses, Dr. Gollaher
determined that appellant's delusions about being God were not due to a narcotic-
induced psychosis, i.e., when narcotics cause one to hallucinate or become delusional. 
She explained that only one person recalled that appellant had referred to himself as
God near the time of the incident. Gollaher noted that a detective, who had
interviewed appellant at Oakbend shortly after appellant was shot, thought that he
heard appellant say "God," but the detective could not remember the context and, in
retrospect, thought that appellant may have said "gone" rather than "God." Also,
other detectives informed Gollaher that appellant told them, without mentioning God,
that he went to the apartments of Winton, Medina, and Spillers to obtain cigarettes. 
Gollaher explained that, in order to suffer from a narcotic-induced psychosis, the
delusion must remain present in a person's later memories. Thus, based on her
interview of appellant and his inconsistent story as to his state of mind at the time of
the offenses, Gollaher concluded that he did not suffer from narcotic-induced
psychosis. 

 Dr. Gollaher also found it unusual that a person at appellant's age would
experience sudden delusions without having a past history of delusions. When
Gollaher challenged appellant as to the veracity of his belief that he was God,
appellant conceded that, if the jury found him guilty of the offenses, then he "must
not be God." Gollaher emphasized that someone with a delusional order normally
cannot accept the fact that he is deluded. Also, Gollaher found it unusual that, before
a police officer apprehended appellant at the church, appellant panicked and threw
a bag of cocaine into the church's bushes because a person who believed that he was
God would not panic. Gollaher opined that appellant was a narcissist, and, by
asserting that he was God, appellant exhibited his narcissistic trait. Gollaher thus
concluded that appellant knew right from wrong at the time of the offenses,
notwithstanding the fact that she had diagnosed appellant with a polysubstance
dependence.

 Dr. Gollaher also testified that appellant had told her that, on May 9, 2005,
appellant smoked marijuana with his girlfriend, Misha. Appellant subsequently
smoked "sherm," which is a cigarette dipped in formaldehyde, with his cousin,
Gordon. He and Gordon later obtained cocaine because appellant "wanted to feel
alive" after feeling tired. After that, appellant and Misha again smoked marijuana. 
After Misha left, appellant asked Gordon for money. When Gordan gave appellant
one dollar, appellant thought "that everything in the world [was] his." Therefore, he
started thinking that he was God and thought about "robbing [a] bank, stealing a
Navigator[,] or getting a white woman." Gollaher found it unusual that, if appellant
was insane, he would have these thoughts because, as God, "everything is yours."

 Dr. Gollaher conceded on cross-examination that other experts thought that
appellant had a severe mental disease or defect at the time of the offenses such as a
delusional disorder, narcotic-induced psychotic disorder, or schizophrenia. Although
she was not an expert on how long the effect of a narcotic would last, Gollaher
believed that appellant was under the influence of narcotics when he committed the
offenses. Appellant also told Gollaher that he was looking for somebody "like
Britney Spears or someone who looked like that for him to have sex with" at the
Richmond House Apartments. But, appellant thought that the sex would be
consensual. On redirect examination, Gollaher stated that, even if she had diagnosed
appellant with a delusional disorder, narcotic-induced psychotic disorder, or
schizophrenia, it would not have changed her opinion that appellant was sane at the
time of the offense because he knew right from wrong.

Sufficiency of the Evidence

 In his eighth issue, appellant argues that the evidence is legally and factually
insufficient to support his convictions for the offenses of burglary of a habitation with
intent to commit sexual assault and burglary of a habitation with intent to commit
assault because there is no evidence that he intended to sexually assault Winton and
Medina and no evidence that he attempted to assault or did assault Pam Spillers.

Standard of Review

 We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt.
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). In conducting
our legal sufficiency review, we are mindful that the trier of fact is the sole judge of
the weight and credibility of the evidence. Margraves v. State, 34 S.W.3d 912, 919
(Tex. Crim. App. 2000). Thus, when performing our review, we may not reevaluate
the weight and credibility of the evidence and substitute our judgment for that of the
fact-finder. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must
resolve any inconsistencies in the evidence in favor of the verdict. Curry v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000).

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that the
verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We
note that a jury is in the best position to evaluate the credibility of witnesses, and we
afford "due deference" to the jury's determinations. Marshall v. State, 210 S.W.3d
618, 625 (Tex. Crim. App. 2006). Although we should always be "mindful" that a
jury is in the best position to pass on the facts and that we should not order a new trial
"simply because [we] disagree[] with the verdict," it is "the very nature of a factual-sufficiency review that . . . authorizes an appellate court, albeit to a very limited
degree, to act in the capacity of a so-called 'thirteenth juror.'" Watson, 204 S.W.3d
at 414, 416-17. Thus, when an appellate court can "say, with some objective basis
in the record, that the great weight and preponderance of the (albeit legally
sufficient) evidence contradicts the jury's verdict[,] . . . it is justified in exercising its
appellate fact jurisdiction to order a new trial." Id. at 417.


Intent to Commit Sexual Assault 

 In trial court cause numbers 42232B and 42234B and appellate cause numbers
01-07-00686-CR and 01-07-00688-CR, the jury found appellant guilty of the offenses
of burglary of a habitation with the intent to sexually assault Winton and Medina. 

 A person commits the offense of burglary if, without the effective consent of
the owner, he enters a habitation with the intent to commit a felony, theft, or an
assault. Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2003). The offense of sexual
assault is a felony. Id. § 22.011(f) (Vernon Supp. 2007). A person commits the
offense of sexual assault if he intentionally or knowingly (1) causes the penetration
of the anus or female sexual organ of another person by any means, without that
person's consent, (2) causes the penetration of the mouth of another person by the
sexual organ of the actor, without that person's consent, or (3) causes the sexual
organ of another person, without that person's consent, to contact or penetrate the
mouth, anus, or sexual organ of another person, including the actor. Id. § 22.011(a)
(Vernon Supp. 2007). 

 Intent is an essential element of the offense of burglary of a habitation which
the State must prove beyond a reasonable doubt. LaPoint v. State, 750 S.W.2d 180,
182 (Tex. Crim. App. 1986). The intent to commit the felony must exist at the time
of, and accompany, the entry into the habitation. Hobbs v. State, 175 S.W.3d 777,
783 n.3 (Tex. Crim. App. 2005). However, the jury is exclusively empowered to
determine the issue of intent, and the events of a burglary may imply the intent with
which a defendant enters a habitation. Moreno v. State, 702 S.W.2d 636, 641 (Tex.
Crim. App. 1986). A defendant's intent to commit an offense generally must be
established by circumstantial evidence and may be inferred from the defendant's acts,
words, and conduct. Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim. App.
1991).

 In support of his argument, appellant relies upon cases in which appellate
courts have found that the evidence was insufficient or factually insufficient to
support the defendants' convictions for the offenses of burglary due to a lack of
intent. See Walls v. State, 164 Tex. Crim. 470, 471, 299 S.W.2d 953, 953 (1957)
(opining that evidence was insufficient when defendant entered store, exposing
himself, walked to point approximately six feet from complainant, and left when he
saw complainant with companion and said, "Oh"); Baldwin v. State, 153 Tex. Crim.
19, 21, 216 S.W.2d 985, 986 (1949) (concluding that evidence was insufficient when
defendant only cut window screen to complainant's bedroom and subsequently left);
Hays v. State, 86 Tex. Crim. 469, 471, 217 S.W. 938, 938 (1920) (holding that
evidence was insufficient when defendant was holding complainant's hand and, upon
her awakening, did not conceal identity, use any force or words, and promptly left her
bedroom); Watson v. State, 160 S.W.3d 627, 630 (Tex. App.--Waco 2005) (finding
evidence was factually insufficient when defendant grabbed complainant's knife,
while exposing himself aroused, because he did not say anything or threaten
complainant), rev'd, 204 S.W.3d 404 (Tex. Crim. App. 2006). 

 Here, unlike the cases cited by appellant, direct and circumstantial evidence
supports a finding that appellant did have the intent to sexually assault Winton and
Medina. Viewing the evidence in the light most favorable to the verdict, appellant
violently kicked in Winton's front door and entered her apartment at approximately
1:30 a.m., took off his shirt, grabbed her arm, brushed her breast, attempted to back
her towards her bed, and told her "to come with [him]" before Winton escaped. 
Appellant also violently kicked in Medina's front door and started touching her breast
before she escaped. When Medina told appellant that a woman lived upstairs, he
stated "woman upstairs," went upstairs, and violently kicked in Pam Spillers's door. 
Also, appellant told Dr. Gollaher that he was looking to have "sex" with a "white
woman." A rational trier of fact could have found, beyond a reasonable doubt, that
appellant entered Winton's and Medina's habitations, without their consent, with the
intent to commit a sexual assault. Accordingly, we hold that the evidence is legally
sufficient to support the jury's finding that appellant intended to sexually assault
Winton and Medina in trial court cause numbers 42232B and 42234B and appellate
cause numbers 01-07-00686-CR and 01-07-00688-CR. 

 In regard to his factual sufficiency challenge, appellant asserts that he did not
"physically cause pain," "threaten to cause bodily injury," "restrain or block the exit,"
"say anything of a sexual nature," "touch himself or expose himself sexually," "reach
under the complainants' clothing or disrobe them," "force the complainants into a
sexual position," "prevent the complainants from speaking," "display a weapon,"
"conceal his identity," or "use any form of stealth or stalk." Appellant aslso aserts
that he "allow[ed] the . . . complainants to leave their apartments." Contrary to this
final assertion, Winton and Medina testified that they had to flee their apartments
after appellant violently kicked in their doors and touched their breasts. The fact that
appellant did not commit the other enumerated acts does not negate his intent to
sexually assault Winton and Medina after breaking and entering into their apartments. 
The jury would have been entitled to find that appellant would have sexually
assaulted Winton and Medina but for their escape. Moreover, although detectives
told Dr. Gollaher that appellant had told them that he was looking for cigarettes when
he broke and entered into Winton's and Medina's apartments, appellant contradicted
himself when he told Dr. Gollaher that he wanted a "white woman" for "sex." See
Marshall, 210 S.W.3d at 625. We conclude that the evidence is not so obviously
weak such that the verdict is clearly wrong and manifestly unjust, or that the proof of
guilt is against the great weight and preponderance of the evidence. Accordingly, we
hold that the evidence is factually sufficient to support the jury's implied finding that
appellant intended to sexually assault Winton and Medina in trial court cause
numbers 42232B and 42234B and appellate cause numbers 01-07-00686-CR and 01-07-00688-CR. 

Attempt to Commit an Assault

 In trial court cause number 42233B and appellate cause number 01-07-00687-CR, the jury found appellant guilty of the offense of burglary of a habitation,
attempting to assault or assaulting Pam Spillers. 

 A person also commits the offense of burglary of a habitation if, without the
effective consent of the owner, he enters a habitation and commits or attempts to
commit a felony, theft, or an assault. Tex. Penal Code Ann. § 30.02(a)(3) (Vernon
2003). A person commits the offense of assault if he (1) intentionally, knowingly, or
recklessly causes bodily injury to another, (2) intentionally or knowingly threatens
another with imminent bodily injury, or (3) intentionally or knowingly causes
physical contact with another when the person knows or should reasonably believe
that the other will regard the contact as offensive or provocative. Id. § 22.01(a)
(Vernon Supp. 2007). A person commits the offense of criminal attempt if, with
specific intent to commit an offense, he does an act amounting to more than mere
preparation that tends, but fails, to effect the commission of the offense. Id. § 15.01
(Vernon 2003). The "specific intent" element means that a person must intend to
bring about the desired result. Flanagan v. State, 675 S.W.2d 734, 741 (Tex. Crim.
App. 1982). Intent may be inferred from the person's acts, words, and conduct. 
Hernandez, 819 S.W.2d at 810.

 Viewing the evidence in the light most favorable to the verdict, appellant
violently kicked in the front door of both Winton and Medina and entered their
apartments at approximately 1:30 a.m. After touching the breasts of both Winton and
Medina, placing them in fear of him, and causing them to flee their apartments,
appellant rushed upstairs to Pam Spillers's apartment in search of a "woman
upstairs." After he violently kicked in Pam Spillers's front door, Sergeant Spillers
was able to stop the attack by shooting appellant. After Sergeant Spillers shot
appellant, appellant again attempted to enter the apartment. A rational trier of fact
could have found, beyond a reasonable doubt, that appellant entered Spillers's
habitation, without her consent, and attempted to commit an assault. The fact that
Sergeant Spillers was able to foil the attack by shooting appellant does not preclude
such a finding. Accordingly, we hold that the evidence is legally sufficient to support
the jury's implied finding that appellant entered Pam Spillers's apartment and
attempted to commit an assault.

 Viewing the evidence neutrally, although, as noted by appellant, he did not
cause physical contact with Pam Spillers or Sergeant Spillers, he was only prevented
from doing so after Sergeant Spillers shot him. Just because he did not commit an
assault does not mean that he did not attempt to do so. We conclude that the evidence
is not so obviously weak such that the verdict is clearly wrong and manifestly unjust,
or that the proof of guilt is against the great weight and preponderance of the
evidence. Accordingly, we hold that the evidence is factually sufficient to support
the jury's implied finding that appellant attempted to commit an assault in trial court
cause number 42233B and appellate cause number 01-07-00687-CR.

 We overrule appellant's eighth issue.Competency


 In his fourth issue, appellant argues that he was "denied due process and a fair
trial" because he was "incompetent during the trial on the criminal charge." In his
first through third issues, appellant contends that the trial court, in his competency
trial, erred in admitting a state hospital report over his confrontation and hearsay
objections, in excluding evidence that he was exhibiting signs of mental illness
months before the offense, and in charging the jury on his burden of proof and the
"presumption of competency." 

 At his incompetency trial, on February 20, 2007, Stephen Doggett, appellant's
trial counsel, testified that he questioned appellant's competency to stand trial when
he first started to represent him. In every conversation that Doggett had with
appellant, appellant always stated that he was "God." Eventually, Doggett obtained
a plea offer from the State, which Doggett felt was in appellant's best interest to
accept. However, appellant rejected the offer, informing Doggett that he was going
to "walk out of the jail a free man" because "he [was] God and he [was] this king and
he [was] untouchable." Doggett explained that, although appellant had a "factual
understanding" of the proceedings, he did not have a "rational understanding" of the
proceedings. Accordingly, Doggett asked the trial court to evaluate appellant's
competency, and Dr. Susana Rosen, a psychologist, found that appellant was
incompetent to stand trial. The State agreed that appellant was incompetent, and, on
October 4, 2005, appellant was hospitalized at the North Texas State Hospital Vernon
Campus ("Vernon").

 Doggett further testified that on May 1, 2006, Dr. Thomas Gray, a
psychologist, found that appellant had regained his competency to stand trial. 
Moreover, two other psychiatrists or psychologists found that appellant was
competent. After May 1, 2006, no other psychiatrist or psychologist had found
appellant to be incompetent. However, Doggett opined that appellant was still
incompetent after May 1, 2006. Doggett explained that appellant still did not have
a rational understanding of the proceedings so as to be able to consult with Doggett
about his case. 

 Dr. Gollaher testified that, based on her professional evaluation of appellant,
he was competent to stand trial. She specifically noted that appellant understood that,
through plea bargaining, it was possible to receive a lighter punishment. Also,
appellant knew what charges he faced and the potential consequences. Gollaher
further explained that appellant's delusions about being God did not affect his ability
to understand the proceedings. On cross-examination, Gollaher did concede that
appellant initially informed her that he did not understand the charges against him,
but she concluded that such a response is not that unusual of an answer. She also
conceded that appellant initially told her that the prosecutor had the same role as a
judge. 

 Mr. Howard, appellant's father, testified as to appellant's asserted
incompetence. Mr. Howard explained that appellant has mental issues, does not
understand him, and thinks that he is God. 

 Appellant also made a bill of exception, which included the testimony of Larry
Green, Neal, Hill, and Linda Thompson. Appellant offered this testimony in order
to show previous evidence of a mental illness and to show that he was not
malingering. The trial court refused to allow the witnesses' testimony to go before
the jury because it was irrelevant to appellant's competency in February of 2007 and
was duplicative, considering that appellant's delusions about God would come in
from his prior treatments and finding of incompetency. In the bill of exception, all
of the witnesses testified as to how appellant had delusions that he was God around
April and May of 2005.

Due Process

 In his fourth issue, appellant argues that he "was denied due process and a fair
trial under the [Fifth] and [Fourteenth] Amendments to the [United States]
Constitution and due course of law under the Texas Constitution because he was
incompetent during the trial on the criminal charges." (9) See U.S. Const. amends. V,
XIV. Appellant asserts that "there was ample evidence presented in the competency
trial that appellant was incompetent" and "appellant's mental illness [impaired]
appellant's ability to realistically appreciate the jeopardy he was in and to rationally
consider whether to take a plea bargain as recommended by trial counsel." He also
complains of the trial court's failure to conduct another incompetency trial after his
trial counsel asserted during trial that appellant was still incompetent and moved for
a mistrial.

 A conviction obtained while a defendant is legally incompetent violates due
process of law. See Pate v. Robinson, 383 U.S. 375, 378, 86 S. Ct. 836, 838 (1966);
McDaniel v. State, 98 S.W.3d 704, 709 (Tex. Crim. App. 2003). A defendant is
incompetent to stand trial if the defendant lacks: (1) sufficient present ability to
consult with counsel with a reasonable degree of rational understanding, or (2) a
rational as well as factual understanding of the proceedings against him. Tex. Code
Crim. Proc. Ann. art. 46B.003(a) (Vernon 2007). A defendant is presumed
competent to stand trial and shall be found competent to stand trial unless proved
incompetent by a preponderance of the evidence. Id. art. 46B.003(b) (Vernon 2007).

 Here, in regard to the jury's finding that appellant was competent to stand trial,
we note that appellant's trial counsel conceded on cross-examination that three
different psychologists or psychiatrists had found appellant competent to stand trial. 
He also conceded that, since May 1, 2006, no other psychologists or psychiatrists had
found that appellant was incompetent. Also, after appellant's counsel told the jury
about Dr. Gray's report, in which Gray stated that appellant was competent, the State
introduced the report into evidence. Dr. Gollaher further testified as to appellant's
competency. The only evidence that appellant provided regarding his mental status
was the testimony of his trial counsel and father. No expert testified as to appellant's
incompetency to stand trial. 

 In regard to appellant's motion for mistrial based on his incompetency to stand
trial, we note that a court must "determine by informal inquiry whether there is some
evidence from any source that would support a finding that the defendant may be
incompetent to stand trial." (10) Tex. Code Crim. Proc. Ann. art. 46B.004(b)-(c)
(Vernon 2007); Fuller v. State, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008). The
record reflects that the trial court questioned appellant's trial counsel, Doggett, after
he raised the incompetency issue during the trial. See Rojas v. State, 228 S.W.3d 770,
771 (Tex. App.--Amarillo 2007, no pet.). Appellant contends the trial court failed
to order another incompetency examination of appellant or hold another
incompetency trial. See Tex. Code Crim. Proc. Ann. art. 46B.005(a)-(b) (Vernon
2007); Rojas, 228 S.W.3d at 771-72. 

 We review a trial court's decision to deny a defendant a psychiatric
examination to determine competency for an abuse of discretion. Young v. State, 177
S.W.3d 136, 139 (Tex. App.--Houston [1st Dist.] 2005, pet. dism'd). We also review
a trial court's decision not to conduct an incompetency trial for an abuse of discretion. 
Moore v. State, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999). In order to justify a
second incompetency trial, a defendant has to offer new evidence of a change in the
defendant's mental condition since the first incompetency trial. Learning v. State,
227 S.W.3d 245, 250 (Tex. App.--San Antonio 2007, no pet.); Clark v. State, 47
S.W.3d 211, 218 (Tex. App.--Beaumont 2001, no pet.).

 Here, Doggett, while moving for a mistrial based on appellant's incompetency,
prefaced his objection by stating that he did "not have any new evidence to offer" on
appellant's incompetency. Although Doggett did later state that appellant had told
him that "we're going to go get some shrimp together" with the "bailiffs and assistant
[district attorneys]" after appellant was found not guilty at the conclusion of trial, this
argument was no different from Doggett stating at appellant's incompetency trial that
appellant was incompetent because he thought he would be found not guilty. Doggett
also re-urged that appellant did not have a rational understanding of the proceedings
against him. Appellant's trial counsel also made this exact same argument at
appellant's incompetency trial. Accordingly, we hold that the trial court did not err
in denying appellant's request for a subsequent psychiatric examination or subsequent
incompetency trial. See Learning, 227 S.W.3d at 250. We further hold that the trial
court did not deny appellant due process of law, violate appellant's right to a fair trial,
or err in denying appellant's motion for mistrial.

 We overrule appellant's fourth issue.

 Erroneous Admission of Evidence

 In his first issue, appellant argues that the trial court erred in admitting Dr.
Gray's report into evidence at his incompetency trial because it violated his Sixth
Amendment right to confrontation and was hearsay. See U.S. Const. amend. VI;
Tex. R. Evid. 803(8). 

 However, it was appellant who first told the jury of Dr. Gray's report, starting
with his opening statement. Also, appellant's trial counsel, Doggett, testified that Dr.
Gray, in the report, found that in May of 2006, appellant had regained his
competency. Moreover, appellant did not object to the State's questioning of Dr.
Gollaher about Gray's report. It was not until the State's second redirect examination
of Gollaher that the State introduced Gray's report into evidence. Only at this time
did appellant finally object that, if the trial court allowed the report into evidence, it
would violate appellant's right to confrontation and was inadmissible hearsay.

 A defendant generally waives a complaint regarding improperly admitted
evidence when the same evidence is introduced by the defendant himself. Rogers v.
State, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993). An exception to the general rule
is when a defendant introduces the evidence in an effort to meet, rebut, destroy, deny,
or explain evidence that has already been improperly admitted. Id.; Wootton v. State,
132 S.W.3d 80, 84 (Tex. App.--Houston [14th Dist.] 2004, pet. ref'd).

 Here, appellant waived any error in the admission of Dr. Gray's report because
appellant's counsel first testified about the complained-of evidence. Accordingly, we
hold that appellant did not preserve for appellate review his Confrontation Clause and
hearsay objections.

 We overrule appellant's first issue.

Erroneous Exclusion of Evidence

 In his second issue, appellant argues that the trial court erred at his
incompetency trial in excluding the testimony of appellant's acquaintances and family
members about appellant's "bizarre thinking and behavior in the months leading up
to the charged offenses."

 The Texas Rules of Evidence apply to an incompetency trial before a jury or
the trial court. See Tex. Code Crim. Proc. Ann. art. 46B.008 (Vernon 2007). 
Relevant evidence is "evidence having any tendency to make the existence of any fact
that is of consequence to the determination of the action more or less probable than
it would be without the evidence." Tex. R. Evid. 401. All relevant evidence is
admissible, "except as otherwise provided by Constitution, by statute, by these
[R]ules, or by other rules prescribed pursuant to statutory authority." Tex. R. Evid.
402. Irrelevant evidence is inadmissible. Id. We will not disturb a trial court's
determination regarding the admissibility of relevant evidence unless an abuse of
discretion has been shown. Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App.
1993).

 A person is incompetent to stand trial if the person does not have (1) a
sufficient present ability to consult with the person's lawyer with a reasonable degree
of rational understanding, or (2) a rational as well as factual understanding of the
proceedings against the person. Tex. Code. Crim. Proc. Ann. art. 46B.003. 
Evidence of a person's mental status at the time of the offense is not evidence of a
person's incompetency to stand trial. See Graham v. State, 566 S.W.2d 941, 954
(Tex. Crim. App. 1978); Valdes-Fuerte v. State, 892 S.W.2d 103, 108 (Tex.
App.--San Antonio 1994, no pet.).

 Here, in his bill of exception, all of appellant's witnesses testified as to
appellant's state of mind near the time of the offenses' commission in May of 2005. 
Appellant had his competency hearing in February of 2007. The excluded testimony
did not pertain to appellant's ability to consult with his lawyer or understand the
proceedings against him at the time of trial. See Thompson v. State, 915 S.W.2d 897,
902 (Tex. App.--Houston [1st Dist.] 1996, pet. ref'd) (noting that defendant's
evidence did not show present incompetency when events occurred nine months prior
to trial). Accordingly, we hold that the trial court did not err in excluding the
testimony of appellant's witnesses as irrelevant in his incompetency trial.

 We overrule appellant's second issue.

Jury Charge

 In his third issue, appellant argues that the trial court erred in instructing the
jury that appellant was presumed competent and that he had the burden to prove his
incompetency because appellant had a prior unvacated adjudication of incompetency
which shifted the burden of proof to the State to prove his competency beyond a
reasonable doubt. Appellant also asserts that, even if the trial court correctly
instructed the jury, the trial court erred in failing to include the language required by
Texas Penal Code section 2.05. See Tex. Penal Code Ann. § 2.05 (Vernon Supp.
2007).

 In analyzing a jury-charge issue, our first duty is to decide whether error exists. 
Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). Only if we find
error do we then analyze that error for harm. Id.

 In Medina v. California, the United States Supreme Court held that it does not
violate due process to presume that a defendant is competent to stand trial and to
place the burden of proof on the defendant to prove his incompetence to stand trial
by a preponderance of the evidence. 505 U.S. 437, 452-53, 112 S. Ct. 2572, 2581
(1992); see Penry v. State, 903 S.W.2d 715, 729 (Tex. Crim. App. 1995). Article
46B.113(d) of the Texas Code of Criminal Procedure provides,

If the head of a facility or outpatient treatment provider to which the
defendant was committed as a result of a finding of incompetency to
stand trial has provided an opinion that the defendant has regained
competency, competency is presumed at a hearing under this subchapter
and continuing incompetency must be proved by a preponderance of the
evidence.

Tex. Code Crim. Proc. Ann. art. 46B.113(d) (Vernon Supp. 2007). Although the
United States Supreme Court did not address the allocation of the burden of proof on
a defendant to prove incompetency after a trial court's initial finding of
incompetency, the United States Supreme Court noted that "it is appropriate to
exercise substantial deference to legislative judgments in this area." Medina, 505
U.S. at 446, 112 S. Ct. at 2577. Even though the United States Supreme Court
recognized that some states require the State to prove a defendant's competence, the
Court still held that allocating the burden of proving incompetence to the defendant
did not violate due process. Id. at 448, 112 S. Ct. at 2578.

 Here, in compliance with article 46B.113(d), the trial court instructed the jury
that appellant was presumed to be competent and that he had the burden to prove his
incompetency by a preponderance of the evidence. Accordingly, we hold that the
trial court did not err in instructing the jury that appellant was presumed to be
competent and that he had the burden to prove his incompetency.

 Next, we consider appellant's argument that the trial court erred in not
instructing the jury in accordance with Texas Penal Code section 2.05. See Tex.
Penal Code Ann. § 2.05(a). Section 2.05 ensures that the State complies with due
process by proving, beyond a reasonable doubt, each element of an offense. See id.
§ 2.05; see also In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970) (noting
that "Due Process Clause protects the accused against conviction except upon proof
beyond a reasonable doubt of every fact necessary to constitute the crime with which
he is charged"). Section 2.05, by its terms, pertains to "a presumption with respect
to any fact." Tex. Penal Code Ann. § 2.05(a). Because the presumption of
competency does not concern a fact necessary to constitute an offense, section 2.05
does not apply in a competency hearing. See id.; Medina, 505 U.S. at 448, 112 S. Ct.
at 2578. Accordingly, we hold that the trial court did not err in not instructing the
jury in accordance with section 2.05.

 We overrule appellant's third issue.

Juror Misconduct

 In his sixth issue, appellant contends that the trial court erred in denying his
motion for mistrial "based on a juror's failure to divulge during jury selection that she
knew an assistant district attorney and was currently attending" a weekly bible study
that he taught.

 After approximately three days of trial, on April 12, 2007, appellant rested his
case and moved for a mistrial after he had learned on April 11, 2007, from Wesley
Wittig, an assistant district attorney, that a juror knew Wittig. During voir dire, the
trial court asked the veniremembers, "Do any of you know any other members of the
[d]istrict [a]ttorney's [o]ffice, staff, the assistant district attorneys, investigators, or
the clerical staff employed with the district attorney's office?" The juror in question
did not inform the trial court of her acquaintance with Wittig. 

 At a hearing outside the jury's presence, Wittig testified that, when it came to
his attention that the juror in question was serving on the jury, he informed the trial
court of their acquaintance. Wittig explained that he teaches a Wednesday night bible
study, in which the juror was a participant, and that he had either last seen her at the
bible study "a week ago" or at church on April 8, 2007. The juror had informed
Wittig "in the past couple of weeks" that she was to be summoned for jury duty. 
Wittig noted that he had never seen the jury panel or the juror in the courtroom. In
accordance with the trial court's instructions, on April 11, 2007, Wittig went to his
bible study and arranged for a substitute teacher. Although he did see the juror park
her car and come into the church, he left out of a back door and had "zero contact"
with the juror.

 On cross-examination, Wittig stated that the juror in question knew that he was
an assistant district attorney. Also, he stated that he had conducted the bible study for
approximately eight months and that he knew the attendees "pretty well." 

 Appellant explained that, had he known that the juror in question knew Wittig,
he would have attempted to either have her struck for cause or have used a
peremptory strike. At the conclusion of the hearing, the trial court denied appellant's
motion for a mistrial.

 We review a trial court's denial of a motion for mistrial for an abuse of
discretion. Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). The Sixth
Amendment guarantees the right to a trial before an impartial jury. U.S. Const.
amend. VI; Franklin v. State, 138 S.W.3d 351, 354 (Franklin II) (Tex. Crim. App.
2004). Included in the constitutional right to an impartial jury is the ability to
conduct adequate voir dire to identify unqualified jurors. Franklin II, 138 S.W.3d at
354. The Texas Court of Criminal Appeals has "consistently held that essential to the
Sixth Amendment guarantees of the assistance of counsel and trial before an impartial
jury 'is the right to question veniremembers in order to intelligently exercise
peremptory challenges and challenges for cause.'" Id. (quoting Raby v. State, 970
S.W.2d 1, 10 (Tex. Crim. App. 1998)). 

 When a juror "'withholds material information during the voir dire process, the
parties are denied the opportunity to exercise their challenges, thus hampering their
selection of a disinterested and impartial jury.'" Id. (quoting Salazar v. State, 562
S.W.2d 480, 482 (Tex. Crim. App. 1978)). Thus, the defendant "must show that the
juror withheld material information during voir dire, and the information is withheld
despite due diligence exercised by the defendant." Id. at 355-56. In order to show
materiality, the concealed information does not have to show actual bias, just that it
has a tendency to show bias. Id. at 356. "[M]ere familiarity with a witness is not
necessarily material information." Franklin v. State, 12 S.W.3d 473, 478 (Franklin
I) (Tex. Crim. App. 2000); see Decker v. State, 717 S.W.2d 903, 907 (Tex. Crim.
App. 1983). In the event that a juror withholds material information during voir dire,
it is not dispositive of the issue if the juror states that it will not affect his verdict. 
Franklin II, 138 S.W.3d at 355-56. The good faith of the juror is "largely irrelevant
when considering the materiality of information withheld." Franklin I, 12 S.W.3d at
478. 

 However, initially, the burden is on the parties to be diligent during voir dire
and ask all pertinent questions to reveal potential bias. Gonzales v. State, 3 S.W.3d
915, 917-18 (Tex. Crim. App. 1999). Defense counsel is entitled to rely on the
questions asked by the trial court. Armstrong v. State, 897 S.W.2d 361, 364 n.1 (Tex.
Crim. App. 1995). In Franklin II, the Texas Court of Criminal Appeals held that a
juror's withholding of material information, despite the defendant's due diligence,
was constitutional error. 138 S.W.3d at 357; see Tex. R. App. P. 44.2(a).

 In Franklin I, an aggravated sexual assault of a child case, a juror did not
disclose that she knew the complainant until the complainant was called to testify at
trial, even though the juror was specifically questioned in voir dire as to whether she
knew the complainant. 12 S.W.3d at 475-76. The juror revealed not only that her
daughter and the complainant were in the same girl scout troop, but that she was the
girl scout troop's assistant leader. Id. at 476. The trial court asked the juror whether
"she could listen to the evidence in the case and base her judgment just on what she
heard from the stand," and the juror stated that she could. Id. The defendant moved
for a mistrial and specifically sought to question the juror about any potential bias,
and the trial court refused both requests. Id. 

 On appeal, the defendant asserted that the trial court erred in denying his
motion for a mistrial because the juror withheld material information. Id. at 477. The
Texas Court of Criminal Appeals noted that the defendant "was not permitted to
determine the extent of the relationship between [the complainant] and [the] [j]uror
. . . due to no fault of his own." Id. at 478. Thus, because the defendant "was never
permitted to question [the] [j]uror . . . concerning her relationship with the
[complainant] to determine the extent of prejudice that might have existed," the court
held that the withheld information was material and remanded the cause to the court
of appeals for a harm analysis. Id. at 479.

 In support of his argument that Miller withheld material information, appellant
relies upon the sequel of Franklin I, i.e., Franklin II, where the Texas Court of
Criminal Appeals decided whether the court of appeals applied the correct harm
analysis. The court explained,

We hesitate to hold [the defendant] to a burden of showing actual bias
or prejudice when the trial [court] denied him the ability to develop
evidence of actual bias or prejudice on the record. We believe that all
of these factors together--[the juror's] failure to reveal her relationship
to the [complainant], the [trial court's] denial of a mistrial, and the trial
[court's] refusal to allow defense counsel to question [the juror] about
her relationship to the [complainant]--affected [the defendant's] right
to a trial by an impartial jury. . . . The fact that the [trial court] would
not allow [the defendant] to ask the juror additional questions at trial
compounded the situation since he could not then affirmatively get any
evidence of bias on the record.


Franklin II, 138 S.W.3d at 355, 358. Thus, the court found that the court of appeals
correctly decided that the trial court's error was constitutional. Id. at 358. However,
here, although appellant developed a record through the questioning of Wittig, he
never asked the trial court if he could question Miller.

 Here, the record does not show that Miller's concealed information about her
acquaintance with Wittig "has a tendency to show bias." See id. at 356. The trial
court did not deny appellant the opportunity to develop the record. See Franklin II,
138 S.W.3d at 355; Franklin I, 138 S.W.3d at 478. Although Wittig was an assistant
district attorney and Miller's acquaintance, he was not involved in appellant's case
and had not interacted with Miller since the start of appellant's trial. See Brown v.
State, 183 S.W.3d 728, 739-40 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd)
(finding that juror's failure to reveal that she knew testifying police officer was not
material due to attenuated relationship between juror and officer). Accordingly, we
hold that the trial court did not err in denying appellant's motion for mistrial.

 We overrule appellant's sixth issue.

Jury Charge

 In his ninth through eleventh issues, appellant argues that the trial court, in the
trial on the merits, erred in instructing the jury because it gave incorrect instructions
as to his insanity defense and incorrectly submitted an instruction on voluntary
intoxication.


Standard of Review 

 The function of the jury charge is to instruct the jury on the law applicable to
the case. Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007). The jury charge
must contain an accurate statement of the law and must set out all the essential
elements of the offense. Dinkins v. State, 894 S.W.2d 330, 339 (Tex. Crim. App.
1995). When we review the charge for an asserted error, we must examine the charge
as a whole instead of a series of isolated and unrelated statements. Id. Failure to give
an abstract instruction is reversible only when such an instruction is necessary to a
correct or complete understanding of concepts or terms in the application part of the
charge. Plata v. State, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), overruled on
other grounds, Malik v. State, 953 S.W.2d 234 (Tex. Crim. App. 1997). We review
a trial court's denial of a jury instruction for an abuse of discretion. See Threadgill
v. State, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). 

 Again, in analyzing a jury-charge issue, our first duty is to decide whether error
exists. Middleton, 125 S.W.3d at 453. Only if we find error, do we then analyze that
error for harm. Id.

Insanity

 In his ninth issue, appellant argues that, although he requested an insanity
instruction, the trial court erred in instructing the jury, over his objection, that "the
term mental disease or defect does not include abnormality manifested only by
repeated or otherwise antisocial conduct" because "[t]here was no evidence of
abnormality manifested only by repeated criminal or otherwise antisocial conduct." In a jury trial, "the issue of the defendant's sanity shall be submitted to the jury
only if the issue is supported by competent evidence." Tex. Code Crim. Proc. Ann.
art. 46C.151(a) (Vernon 2007). If evidence from any source raises the issue of
insanity, the trial court must include an instruction on this defense in the jury charge. 
Gibson v. State, 726 S.W.2d 129, 132 (Tex. Crim. App. 1987). Texas Penal Code
section 8.01 provides,

(a) It is an affirmative defense to prosecution that, at the time of the
conduct charged, the actor, as a result of severe mental disease or
defect, did not know that his conduct was wrong.


(b) The term "mental disease or defect" does not include an
abnormality manifested only by repeated criminal or otherwise
antisocial conduct.

Tex. Penal Code Ann. § 8.01 (Vernon 2003).

 Here, appellant committed "repeated" offenses of burglary of a habitation and
the trial court simply instructed the jury in accordance with the statute. Accordingly,
we hold that, examining the charge as a whole, the trial court did not err in instructing
the jury as to appellant's insanity defense.

 We overrule appellant's ninth issue.

 In his tenth issue, appellant argues that the trial court erred in instructing the
jury that "there was no presumption of sanity" because, "[d]uring jury selection, the
[State] incorrectly told the jury panel that everyone is presumed to be sane." 

 We first note that, inasmuch as appellant now complains about the State's
incorrect statements at voir dire that there is a presumption of sanity, by failing to
object at trial, appellant has waived any error. See Nelson v. State, 661 S.W.2d 122,
124 (Tex. Crim. App. 1983) (noting that, absent timely objection, voir dire error is
waived). The "presumption of sanity" is "merely a rule fixing the burden of
persuasion and is a correlative of the affirmative defense of insanity." Madrid v.
State, 595 S.W.2d 106, 110 (Tex. Crim. App. 1979). The presumption of sanity "is
not a true presumption at all; rather, it is a substantive rule of law." Id.

 Here, appellant objected to the jury charge and requested that the trial court
instruct the jury "that there is no presumption of sanity." The trial court refused
appellant's request. The trial court's failure to include in the abstract portion of the
jury charge an instruction stating that there is no presumption of sanity was not
necessary to correct or complete the concepts or terms in the application portion of
the charge. Indeed, such an instruction is at odds with the instruction given that
insanity is an affirmative defense. Accordingly, we hold that, examining the charge
as a whole, the trial court did not err in refusing appellant's requested instruction.

 We overrule appellant's tenth issue.

Voluntary Intoxication

 In his eleventh issue, appellant argues that the trial court erred in instructing
"the jury that voluntary intoxication is not a defense because there was no evidence
[that] appellant was intoxicated at the time of the offense."

 Texas Penal Code section 8.04 provides, "Voluntary intoxication does not
constitute a defense to the commission of crime." Tex. Penal Code Ann. § 8.04(a)
(Vernon 2003). The Texas Court of Criminal Appeals has explained that such an
instruction is proper when "there is evidence from any source that might lead a jury
to conclude that the defendant's intoxication somehow excused his actions." Taylor
v. State, 885 S.W.2d 154, 158 (Tex. Crim. App. 1994).

 In support of his argument that such an instruction was improper, appellant
relies upon Nethery v. State, 692 S.W.2d 686 (Tex. Crim. App. 1985). In Nethery,
before the defendant committed the offense of capital murder, he drank three
"kamikaze" drinks, smoked marijuana, and wrote in a statement that he remembered
drinking beer, whiskey, vodka, and smoking marijuana. Id. at 711. The court held
that the defendant was not entitled to an instruction during the punishment phase of
trial under section 8.04(b) that temporary insanity due to intoxication may be
considered as a mitigating factor because a witness testified that the defendant "did
not act or appear to be intoxicated at any time" and a "statement, while it reflects that
[the defendant] was drinking, does not necessarily show intoxication." Id. at 711-12. 
Here, however, evidence was offered at trial that appellant was voluntarily
intoxicated at the time of his offenses, and appellant asserted the affirmative defense
of insanity, as an excuse for his actions, which included testimony about appellant's
voluntary intoxication. See Taylor, 885 S.W.2d at 158 (holding that trial court
properly instructed jury that voluntary intoxication is not defense because evidence
showed that defendant smoked marijuana within few hours of offense and defendant
asserted affirmative defense of insanity).

 Here, appellant's trial counsel asked Winton and Medina if appellant was
"drunk" or "sober," to which both replied that they did not know, but Medina
described appellant's eyes as being abnormal and "golf-sized." Appellant's trial
counsel also asked Detective Butinski if appellant was "drunk or doped up," to which
Butinski replied that he thought appellant was "high." Also, Gordon testified that,
before appellant committed the offenses, appellant consumed beer, ecstasy, and
cocaine. Moreover, appellant told Dr. Gollaher that, before committing the offenses,
he had smoked marijuana and sherm and had consumed cocaine. Tests from Oakbend
showed that appellant had amphetamines, cocaine, and PCP in his system on the night
of the offenses. Accordingly, we hold that the trial court did not err in instructing the
jury that voluntary intoxication is not a defense to the commission of an offense.

 We overrule appellant's eleventh issue.

Dr. Gollaher's Testimony at Trial

 In his fifth issue, appellant argues that the trial court erred in allowing the
State's witness, Dr. Gollaher, a licensed forensic psychologist, to testify, over his
objection, "regarding the effects of drugs on appellant" because she was unqualified
as she "admitted [that] she was not an expert regarding the drugs or their effects."

 Dr. Gollaher testified that she graduated from the doctoral program at
Pepperdine University. Gollaher subsequently completed an internship at the Baylor
College of Medicine ("Baylor"). Gollaher explained that she also completed two
fellowships at Baylor. One fellowship was on brain injury, in which she looked at
criminal behavior, and another fellowship was in general forensics, evaluations, and
therapy. Gollaher was licensed as a psychologist in 1995 and had completed
continuing training requirements.

 In evaluating appellant's sanity, Dr. Gollaher reviewed appellant's offense
report, medical records, and reports from other psychologists. Gollaher also spent
approximately four and one-half hours interviewing appellant. Gollaher further
explained that she interviewed Winston, Medina, Spillers, the police officers involved
with appellant's case, and appellant's physicians who treated appellant's gunshot
wound. Appellant's trial counsel objected to Gollaher's testimony as to appellant's
sanity, asserting that Gollaher was not an expert on narcotics. On cross-examination,
Gollaher conceded that she was not an expert on how long narcotics actively affect
a person and how quickly narcotics leave one's system. The qualifications of a witness to testify as an expert witness are within the trial
court's discretion. Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); Duran
v. State, 163 S.W.3d 253, 258 (Tex. App.--Fort Worth 2005, no pet.). A trial court's
decision to permit a witness to testify as an expert will not be disturbed on appeal
absent a clear abuse of discretion. Wyatt, 23 S.W.3d at 27; Duran, 163 S.W.3d at
258.

 Texas Rule of Evidence 702 provides, "If scientific, technical, or other
specialized knowledge will assist the trier of fact to understand the evidence or to
determine a fact in issue, a witness qualified as an expert by knowledge, skill,
experience, training, or education may testify thereto in the form of an opinion or
otherwise." Tex. R. Evid. 702. When we address "fields of study . . . such as the
social sciences or fields that are based primarily upon experience and training[,] . . .
[the] requirement of reliability applies but with less rigor than to the hard sciences." 
Nenno v. State, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), overruled on other
grounds, State v. Terrazas, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999). In
determining reliability, we ask ourselves (1) whether the field of expertise is a
legitimate one, (2) whether the subject matter of the expert's testimony is within the
scope of that field, and (3) whether the expert's testimony properly relies upon and/or
utilizes the principles involved in that field. Id. Many of the statistical tools used in
hard sciences are unavailable in soft sciences such as psychology. See Nenno, 970
S.W.2d at 561; Mathews v. State, 40 S.W.3d 179, 184 (Tex. App.--Texarkana 2001,
pet. ref'd). 

 No rigid formula exists for determining whether a particular witness is
qualified to testify as an expert. Harnett v. State, 38 S.W.3d 650, 658 (Tex.
App.--Austin 2000, pet. ref'd). "'It is almost impossible to lay down any definite
guidelines for determining knowledge, skill[,] or experience required in a particular
case or of a particular witness.'" Id. (quoting Rogers v. Gonzales, 654 S.W.2d 509,
513 (Tex. App.--Corpus Christi 1983, writ ref'd n.r.e.)).

 In support of his argument, appellant seeks to distinguish Durham v. State, 956
S.W.2d 62 (Tex. App.--Tyler 1997, pet. ref'd). In Durham, after the defendant had
killed a person while driving under the influence of marijuana, he was found guilty
of involuntary manslaughter. Id. at 63. On appeal, the defendant asserted that the
expert's testimony as to his degree of impairment at the time of the incident was
unreliable and not generally accepted by the scientific community. Id. at 65. The
Twelfth Court of Appeals concluded that the trial court did not abuse its discretion
in allowing the expert's testimony because he testified that his technique of testing
marijuana in the bloodstream was reliable and accepted in the scientific community. 
Id. at 66-67. Appellant also seeks to distinguish Jackson v. State, 50 S.W.3d 579
(Tex. App.--Fort Worth 2001, pet. ref'd). In Jackson, the defendant was found guilty
of intoxication manslaughter, and the Second Court of Appeals held that the expert's
testimony as to the amount of cocaine in the defendant's bloodstream was reliable. 
Id. at 585, 587. These cases are inapplicable to appellant because the experts in
Durham and Jackson testified as to novel scientific evidence, a "hard science";
whereas, here, we must address reliability under a less rigid standard.

 Based on her education and experience, Dr. Gollaher was qualified to testify
as to what might or might not have contributed to appellant's behavior at the time of
the offenses. See Roberts v. State, 220 S.W.3d 521, 530 (Tex. Crim. App. 2007). 
Although Gollaher conceded on cross-examination that she was not an expert on the
"half life" of narcotics, she was qualified to testify as to how a narcotic-induced
psychosis could cause a person to have a consistent thought of what occurred at the
time of a particular event, i.e., here, appellant's asserted delusions at the time of the
offenses. Gollaher determined that appellant knew the difference between right and
wrong at the time of the offenses and only referenced appellant's drug use as a factor
in determining appellant's sanity. Gollaher based her reasoning upon the facts that
appellant's story was inconsistent, he did not have a history of delusions, which was
unusual for his age, he became reconciled to the fact that his delusions may have been
false, and his panic at being apprehended by police officers after the commission of
the offenses was inconsistent with the delusion that one is God. Accordingly, we
hold that the trial court did not abuse its discretion in allowing Gollaher to testify as
to his opinion of appellant's mental state at the time of the offense. 

 Appellant also asserts that "no explanation was given about the appropriate
testing, whether the proper testing protocols were followed, and whether the test
supported an opinion of alcohol, marijuana, and cocaine intoxication." However, an
error presented on appeal must comport with the objection raised in the trial court. 
Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Here, appellant, at
trial, only objected to Dr. Gollaher's qualifications to testify about the effects of the
narcotics that appellant had consumed. 

 We overrule appellant's sixth issue. 

 In his seventh issue, appellant argues that the State violated his Fifth
Amendment right to self-incrimination and Sixth Amendment right to counsel
because Dr. Gollaher did not advise appellant of his legal rights before she conducted
her sanity evaluations and, ostensibly, did not inform appellant's counsel of the
existence or subject of her interview with appellant. See U.S. Const. amends. V-VI. 
Appellant also argues that, even if Gollaher's testimony was constitutionally
permissible, the trial court should have excluded appellant's admission to Gollaher
that he wanted "a white girl for sex" because the "statement's prejudicial effect
outweighed its probative value." See Tex. R. Evid. 403.

 If a defendant presents psychiatric evidence at trial, he has no Fifth
Amendment privilege against the State introducing psychiatric testimony in order to
rebut the defendant's insanity defense. Buchanan v. Kentucky, 483 U.S. 402, 422,
107 S. Ct. 2906, 2917 (1987); see Ripkowski v. State, 61 S.W.3d 378, 386 (Tex. Crim.
App. 2001). A defendant's silence would deprive the State of the only effective
means it has of controverting the defendant's proof on an issue that he has interjected
into the case. Estelle v. Smith, 451 U.S. 454, 461, 101 S. Ct. 1866, 1874 (1981);
Ripkowski, 61 S.W.3d at 386. 

 Buchanan dealt with the State introducing psychiatric testimony to rebut the
defendant's expert testimony as to the defendant's asserted insanity. 483 U.S. at 421,
107 S. Ct. at 2916-17. Thus, appellant asserts that his case is distinguishable from
Buchanan because he "did not introduce any expert testimony in support of his
insanity defense."

 In Wilkens v. State, the Texas Court of Criminal Appeals considered, and
rejected, a similar argument. 847 S.W.2d 547, 552 (Tex. Crim. App. 1992). In
Wilkens, the defendant argued that, "because he did not call a mental health expert to
specifically testify that he was insane at the time of the offense, the State should not
have been permitted to rebut his claim by the use of experts." Id. The court
disagreed that "the State must be so limited" and, citing Buchanan, noted that, "if a
defendant introduces psychiatric evidence in some form, the State may also introduce
psychiatric evidence in some form." Id. (citing 483 U.S. at 422, 107 S. Ct. at 2917). 
Here, appellant presented testimony from nine witnesses to support his asserted
insanity defense. Accordingly, the trial court did not err in allowing the State to rebut
this testimony through the use of an expert. See id.

 In Buchanan, the United States Supreme Court also held that there is no Sixth
Amendment violation of a defendant's right to counsel when the defendant initiates
the psychiatric inquiry. 483 U.S. at 425, 107 S. Ct. at 2919; Ripkowski, 61 S.W.3d
at 387. Here, as in Buchanan, appellant initiated the psychiatric inquiry and, thus,
appellant's counsel "was certainly on notice that . . . he would have to anticipate the
use of psychological evidence by the [State] in rebuttal." See 483 U.S. at 425, 107
S. Ct. at 2919. Accordingly, we hold that the trial court did not err in concluding that
Dr. Gollaher's interview of appellant did not violate appellant's Sixth Amendment
right to counsel.

 We also note that appellant asserts that Dr. Gollaher's testimony as to
appellant's statement that he wanted "a white girl for sex" violated Texas Rule of
Evidence 403. See Tex. R. Evid. 403. A defendant must make a timely objection to
preserve error in the admission of evidence. Lagrone v. State, 942 S.W.2d 602, 618
(Tex. Crim. App. 1997); see Tex. R. App. P. 33.1(a). A timely objection must be
made at the first opportunity or as soon as the basis of the objection becomes
apparent. Lagrone, 942 S.W.2d at 618; Jones v. State, 111 S.W.3d 600, 604 (Tex.
App.--Dallas 2003, pet. ref'd). Unless the defendant can show a legitimate reason
for not timely objecting, error is waived if an objection is made after the State has
elicited improper testimony. Lagrone, 942 S.W.2d at 618; Jones, 111 S.W.3d at 604. 
Here, appellant has not shown a legitimate reason as to why he asserted his Rule 403
objection to Gollaher's testimony for the first time in his motion for new trial. 
Accordingly, we hold that appellant has not preserved his Rule 403 objection for our
review. See Duenez v. State, 735 S.W.2d 563, 565 (Tex. App.--Houston [1st Dist.]
1987, pet. ref'd) ("An objection to testimony must be urged at the earliest opportunity
if the right to review is to be preserved."). 

 We overrule appellant's seventh issue.



Conclusion

 We affirm the judgments of the trial court.




 

 Terry Jennings

 Justice


Panel consists of Justices Taft, Jennings, and Bland.

Do not publish. Tex. R. App. P. 47.2(b). 
1. Appellate Cause Nos. 01-07-00686-CR, 01-07-00688-CR; Trial Court Cause Nos.
42232B, 42234B. See Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2003).
2. Appellate Cause No. 01-07-00687-CR; Trial Court Cause No. 42233B. See Tex.
Penal Code Ann. § 30.02(a)(3) (Vernon 2003).
3. See U.S. Const. amend. XIV; Tex. Const. art. I, § 19. 
4. In his testimony to the jury, Sergeant Spillers noted that, even after he shot appellant,
appellant again tried to enter the apartment. 
5. See U.S. Const. amend. V.
6. See Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 1630 (1966).
7. See Tex. Code Crim. Proc. Ann. art. 38.22, § 2-3 (Vernon 2005).
8. See U.S. Const. amend. VI.
9. Because appellant has not argued that the protections in the Texas Constitution exceed
or differ from the protections in the United States Constitution, we only address
appellant's arguments under the United States Constitution. See Arnold v. State, 873
S.W.2d 27, 33 (Tex. Crim. App. 1993).
10. The statute's standard for triggering a competency inquiry, i.e., "evidence suggesting
the defendant may be incompetent," is phrased differently from the current statute's
predecessor, i.e., "evidence of the defendant's incompetency . . . from any source." 
Compare Tex. Code Crim. Proc. Ann. art. 46B.004 (Vernon 2007) (current statute),
with Act of May 29, 1975, 64th Leg., R.S., ch. 415, § 1, art. 46.02, sec. 2(b), 1975
Tex. Gen. Laws 1095, 1096, repealed by Act of Apr. 30, 2003, 78th Leg., R.S., ch.
35, § 15, 2003 Tex. Gen. Laws 57, 72 (predecessor statute); see Greene v. State, 225
S.W.3d 324, 329 n.3 (Tex. App.--San Antonio 2007, pet. filed). In order to trigger
an inquiry under the predecessor statute, the record had to contain evidence raising
a "bona fide doubt" as to the defendant's competency. Greene, 225 S.W.3d at 329
n.3. A bona fide doubt was defined as "a real doubt in the [trial court's] mind as to
the defendant's competency." Mata v. State, 632 S.W.2d 355, 358 (Tex. Crim. App.
1982). It is unclear whether the current statute requires a bona fide doubt to trigger
an inquiry into the defendant's competency because the current statute uses the terms
"suggest," "suggesting," and "suggestion," whereas the predecessor statute did not
use these terms. See Tex. Code Crim. Proc. Ann. art. 46B.004; Greene, 225 S.W.3d
at 329 n.3. We need not decide this issue because it does not affect our analysis.