**Shane S. GREENE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 04–05–00783–CR.**

Court of Appeals of Texas, San Antonio.

Feb. 7, 2007.

Hilary Sheard, Senior Asst. Public Defender, San Antonio, for appellant.

Alan E. Battaglia, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, (not participating).

## OPINION ON REHEARING

Opinion by CATHERINE STONE, Justice.

On October 4, 2006, we issued an opinion and judgment abating the appeal and remanding the cause for a retrospective competency inquiry. Appellant, Shane Greene, has filed a motion for rehearing. We deny appellant's motion; however, we withdraw our opinion and judgment of Oc-

tober 4, 2006, and substitute this opinion and judgment in their stead.

Shane Greene was charged with robbery after he accosted Alice Gutierrez at a bus stop. A jury found Greene guilty of the alleged offense, and the trial court assessed punishment at 10 years confinement. Greene challenges his conviction, complaining of, among other things, the trial court's failure to *sua sponte* conduct an informal inquiry into his competency during the guilt/innocence phase of the trial. Because the record contains evidence suggesting Greene was incompetent to stand trial, we hold that the trial court abused its discretion by failing to provide Greene with a competency inquiry during trial. We therefore abate this appeal and remand the cause to the trial court for a retrospective inquiry into Greene's competence at the time of trial.

## BACKGROUND

On July 8, 2004, Greene, who had one of his hands concealed in his pocket, sat down next to Gutierrez as she waited at a bus stop near the intersection of Callaghan and Ingram Roads. Greene announced to Gutierrez that she "was going to get robbed" and demanded Gutierrez give him her cell phone and money. Gutierrez refused to comply with Greene's demands and immediately went to a nearby Walgreens store to report Greene to the authorities. Greene evaded officers for a short time period, but was eventually apprehended by authorities near Ingram Park Mall. Gutierrez was brought to the scene where Greene was in custody, and she identified Greene as her assailant.

Greene was subsequently arrested and charged with robbery. Greene was granted a sanity examination and an examination concerning his competency to stand trial. The expert who examined Greene determined he was both sane and compe-tent to stand trial. Greene stated he disagreed with the expert's opinion on competency and requested a jury trial on the issue of competency. He also requested a second opinion on the issue of competency, but the trial court denied Greene's request. Although the trial court granted Greene's request for a jury trial on the competency issue, defense counsel later withdrew the request for a jury trial because he did not believe there were grounds to support a claim of incompetency. Defense counsel noted that he waived the issue of Greene's competency. The court therefore proceeded to trial without making a determination as to Greene's competency.

At trial, Gutierrez testified she was on her way to an appointment when she saw Greene pacing back and forth across the street from the bus stop. Greene crossed the street and sat down beside her. Gutierrez described Greene as looking jittery, anxious, and "very strange." She further stated Greene "stood out, acting weird."

Gutierrez testified that when Greene sat down beside her, he asked her to give him some money. Gutierrez told Greene she had no money to give him, and Greene responded that Gutierrez was "going to get robbed." According to Gutierrez, Greene sat with one of his hands in his pockets and stated he wanted her cell phone and money. Gutierrez explained that she was scared of Greene because she did not know what Greene had in his pocket. She stated she immediately went to a nearby Walgreens store after Greene had threatened her. Gutierrez stated she hesitated to call the police, but did so at the urging of her boyfriend. Greene was apprehended a short while later near Ingram Park Mall, where Gutierrez was brought to the scene and identified Greene as her assailant.

Officer Roberto Valle, III, of the San Antonio Police Department, also testified during the State's case-in-chief. Officer Valle testified he was dispatched to a bus stop at the intersection of Callaghan and Ingram Roads to investigate a robbery. He met the complainant in a Walgreens parking lot. According to Officer Valle, Gutierrez was scared and talking very fast. He stated Gutierrez told him Greene had approached her at the bus stop and demanded her money and cell phone. Greene allegedly had his hands in his pockets and told Gutierrez that "this was a robbery." Officer Valle stated Gutierrez told the officer that she believed Greene was armed with a weapon.

Officer Valle learned from Gutierrez that Greene boarded a bus going to Ingram Park Mall. The officer broadcast a description of Greene and his location. Officer Valle left Gutierrez at Walgreens when he learned officers were in pursuit of Greene, who fled officers after he exited his bus. Officer Valle stated he caught up with Greene at a nearby restaurant, where he pointed his firearm at Greene and instructed Greene to get down on the ground. Greene, however, fled, exclaiming "I'm not going out like that." Two other officers eventually caught Greene when one of the officers tackled Greene and the other struck Greene in the back with a baton. Greene was handcuffed and brought to Ingram Park Mall for identification by the complainant. Officer Valle noted that when Greene was arrested, Greene was "rambling and he wasn't making much sense."

Lastly, Greene testified in his own defense. Greene testified he believes he is presently 27 years old and suffers from schizophrenia. Greene stated he has suffered from schizophrenia for "a good portion of [his] adulthood" and is currently being medicated for his condition.[1] He further testified that he has been institutionalized for his condition on several occasions in the past, including recently when he was hearing voices and having a vision that he had a twin who would not leave him alone.

Greene stated that on the day of the incident with Gutierrez, he was out trying to "hustle-up" a cigarette when he saw the complainant at the bus stop. Greene stated he saw Gutierrez "flash this stretched out dollar" at him, "like she wanted [him] to talk to her or something." As Greene testified about his encounter with Gutierrez, Greene explained that "[i]t stinks at night on the whole street . . . It smell[ed] like there [wa]s a lot of love making on the whole street. And I thought she was a nympho or something. I don't know. A freak, a prostitute." He also explained that Gutierrez "looked like [his] baby's mama who had just had [his] baby in September and September 5th is [his] baby's first year birthday. She looks like her so I don't know if I'm putting two people together or not because I have seen people change shapes in front of me because that is how I did like some L.S.D. and some Cannabis."

Greene testified he approached Gutierrez to see if she could give him a dollar to purchase cigarettes. Gutierrez, however, indicated that she had no money to give Greene. Greene then explained that Gutierrez made a phone call after he had asked her for the money. He testified he suddenly became frightened of Gutierrez because her "eyes started . . . looking all evil at [him and] was giving [him] mean looks." He further explained, "I just kind of put her on the side of my vision and then it got worse. I started hallucinating my shadows, I started seeing shadows, like

---

1. Greene stated Haldol is his current schizophrenia medication.

warping or something. And I said get away from me before—and then on accident—before I take the cell phone accidentally came out at the end of my voice...." Greene subsequently admitted that he threatened Gutierrez and gave her an ultimatum, but denied intending to take Gutierrez's phone or money. Greene emphasized that he was hearing voices on the day of the incident, which were "telling [him] to smoke a cigarette the whole time." He stated he "kept thinking they were trying to put their image inside of me to control me and ... possess me or something."

After threatening Gutierrez, Greene stepped aboard the next bus to arrive at the bus stop. Greene testified he had hoped Gutierrez had also boarded the bus so that he could apologize to her for what he had said to her. Gutierrez, however, did not board the bus. Greene proceeded to testify that he exited the bus at a Park and Ride, where he observed the police waiting for him. Greene stated he fled upon seeing the police. Greene noted that one of the police officers who approached him at the Park and Ride had his weapon drawn and told Greene, "this is a robbery." Greene stated he was scared of the officer, so he ran from him. Greene claimed "I didn't choose to run from him, I just ran from him ... I was possessed, I guess. I was thinking of some Iraqian dude."

Greene testified he had "made threats at the cops" when he saw the officers at the Park and Ride and did not know why he had threatened the officers. Although Greene did not know the exact reason for his actions, he told the jury that he had been awake for "three days straight smoking cigarettes" and was "going through nicotine poisoning" at the time of these events. He further stated he is generally afraid of the police because he has had prior negative experiences with the police and has heard negative things about the police through the media. Greene stated, "[t]hey scare me because when I run from them ... I got beat up and plus what I hear on the radio and T.V. and this and that, but I'm not against them, you know, I'm like a pacifist, you know what I mean; I'm not for them, either, but I'm not against them. I do believe in government and, you know, and withholding."

Greene stated the police finally captured him by shooting him in the back with a "marker gun." Greene testified he had red dye on his back and there was a hole in his back at the location where he was shot. Greene explained, "I don't know [if I was shot with a gun]. I had got x-rays and part of my spine is chipped off, it's just a little piece and there is a hole they can see where I got hit. And I was drinking these protein shakes, those weight gainers, so my upper torso was pretty solid. So if it was a rubber bullet it didn't penetrate me."[2] Greene also claimed that the police tried to put him in some type of "armor suit" after his arrest.

During the course of his testimony, Greene stated he did not believe he did anything wrong except for threatening Gutierrez: "I didn't know I did anything wrong at that time ... I just said something, you know, freedom of speech." He further testified that he understands that he has been accused of something and that he was in court to tell the jury his side of the story. Greene also relayed that he "somewhat" understands the role of defense counsel, the prosecution, judge, and jury. He further told the jury that he thinks that he is insane. When asked whether insanity is a defense in this case, Greene stated, "I have no clue."

Lastly, Greene testified about his criminal background during trial. Greene told

---

**2.** The record indicates Greene did not receive any treatment for a gunshot wound.

the jury he was previously convicted of assault based on an encounter he had with several officers at the Bexar County Adult Detention Center. He explained that he bit one of the officers because "[t]he other cop was telling me in his mind to bite him, thinking I was a vampire." Greene also testified he was convicted of assault against his stepfather. During his description of the offense, Greene noted, "I have been influenced by the Japanese, the Koreans; I used to take kick boxing."

Before the close of the evidence, defense counsel asked the trial court to take judicial notice of the fact that Greene was examined before trial by a medical expert who had determined Greene to be both sane and competent to stand trial. The court acknowledged defense counsel's request, and did not make any determination as to Greene's competency to stand trial. The jury subsequently found Greene guilty of the charged offense.

### COMPETENCY

Greene claims the trial court abused its discretion and violated his right to due process by failing to *sua sponte* conduct an informal inquiry into his competency during the guilt/innocence phase of the trial. Greene argues evidence suggesting he may have been incompetent came to the court's attention throughout the underlying proceeding.

■ We review a trial court's decision not to conduct a competency inquiry for an abuse of discretion. *Moore v. State*, 999 S.W.2d 385, 393 (Tex.Crim.App.1999); *Lawrence v. State*, 169 S.W.3d 319, 322 (Tex.App.-Fort Worth 2005, pet. ref'd). A defendant is incompetent to stand trial if he does not have: (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against him. TEX.CODE CRIM. PROC. ANN. art. 46B.003(a) (Vernon Supp.2006). If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial.[3] On suggestion that the defendant may be in-

---

**3.** *Id.* art. 46B.004(b). The current standard for triggering a competency inquiry, *i.e.*, "evidence suggesting the defendant may be incompetent," is phrased differently than the prior standard for requiring a competency inquiry, *i.e.*, "evidence of the defendant's incompetency ... from any source." *Compare* TEX.CODE CRIM. PROC. ANN. art. 46B.004(b) *with* TEX.CODE CRIM. PROC. ANN. art. 46.02, § 2(b), *repealed by* Acts of April 30, 2003, 78th Leg. R.S., ch. 35 § 15, 2003 Tex. Gen. Laws 72. To trigger an inquiry into the defendant's competency under the previous "evidence of the defendant's incompetency ... from any source" standard, the record had to contain evidence raising a "bona fide doubt" as to the defendant's competency. *See McDaniel v. State*, 98 S.W.3d 704, 710–12 (Tex.Crim.App. 2003). A "bona fide doubt" was defined as "a real doubt in the judge's mind as to the defendant's competency." *Mata v. State*, 632 S.W.2d 355, 358 (Tex.Crim.App.1982). Un-

der the current statute, however, we do not believe the record must contain evidence raising a "bona fide doubt" to trigger an inquiry into the defendant's competency. The current statute uses the terms "suggest" and "suggestion" with regard to when a court must conduct a competency inquiry, whereas the former version of the statute did not. We believe the Legislature's addition of such language to the statute signifies that the Legislature intended to depart from the "bona fide doubt" requirement previously established by case law. *See generally Dyar v. State*, 125 S.W.3d 460, 468 (Tex.Crim.App.2003) ("When the Legislature meets, after a particular statute or article has been judicially construed, without changing that statute or article, we presume the Legislature intended the same construction should continue to be applied."); 42 George E. Dix and Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 26.61(b) (2d ed.2001) (noting that the

competent, the court shall conduct an informal inquiry into whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial. *Id.* art. 46B.004(c).

 In this case, we believe the trial court should have inquired into Greene's competency during the guilt/innocence phase of the trial because the court was presented with evidence suggesting that Greene was incompetent to stand trial. The trial court heard Greene make rambling, nonresponsive answers to questions. It also heard Greene provide testimony of the most bizarre quality. Such testimony demonstrates Greene had confused thoughts and was out of touch with reality at the time he testified. Moreover, the court was on notice that Greene was on schizophrenia medication and had a long history of mental illness. We believe Greene's trial testimony should have alerted the trial court of the possibility that Greene was incompetent to stand trial. We recognize that Greene's trial counsel withdrew his pretrial request for a jury trial on the competency issue. Nonetheless, the statute places the burden to conduct an informal inquiry regarding competency on the trial court, and notwithstanding trial counsel's actions, the trial court had before it sufficient evidence suggesting that Greene may be incompetent. Consequently, we hold the trial court abused its discretion by not conducting an informal inquiry into Greene's competency during trial.

Legislature's decision to phrase current standard for requiring a competency inquiry differently than prior standard "suggests that the legislative intention was not to retain in its entire[t]y the prior case law ... and its emphasis on whether the evidence is such as to create a bone fide doubt in the judge's mind as to the defendant's competency.").

### Conclusion

Based on the foregoing, we abate the appeal and remand the cause to the trial court to conduct an inquiry into whether there was some evidence at the time of Greene's trial that would support a finding of incompetence.[4]

4. *Cf. Barber v. State*, 737 S.W.2d 824, 828–29 (Tex.Crim.App.1987) (abating the appeal for a jury determination of competence at the time of trial). Greene has raised one other issue on appeal. We will address Greene's remaining issue, if necessary, once the competency matter is resolved by the trial court.