**Allister BALDWIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–06–00432–CR.

Court of Appeals of Texas,
San Antonio.

March 14, 2007.

Michael D. Robbins, Asst. Public Defender, San Antonio, for appellant.

Alan E. Battaglia, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, REBECCA SIMMONS, Justice.

## MEMORANDUM OPINION

Opinion by ALMA L. LÓPEZ, Chief Justice.

Allister Baldwin appeals a conviction for sexual assault of a child. On appeal, Baldwin contends that the trial court erred in: (1) denying his pre-trial motion for a competency examination; and (2) failing to *sua sponte* conduct an informal inquiry into his competence when evidence suggesting his incompetence arose before trial and during the punishment phase. We affirm the trial court's judgment.

## DISCUSSION

■ We review a trial court's decision not to conduct a competency inquiry under an abuse of discretion standard. *Moore v. State,* 999 S.W.2d 385, 393 (Tex.Crim.App. 1999); *Lawrence v. State,* 169 S.W.3d 319, 322 (Tex.App.-Fort Worth 2005, pet. ref'd). A defendant is incompetent to stand trial if he does not have: (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against him. TEX.CODE CRIM. PROC. ANN. art. 46B.003(a) (Vernon 2006). If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion must suggest that the defendant may be incompetent to stand trial. TEX.CODE CRIM. PROC. ANN. art. 46B.004(b) (Vernon 2006). On suggestion that the defendant may be incompetent, the court must conduct an informal inquiry into whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial. TEX.CODE CRIM. PROC. ANN. art. 46B.004(c) (Vernon 2006). Some evidence is "a quantity more than none or a scintilla, that rationally may lead to a conclusion of incompetency." *Sisco v. State,* 599 S.W.2d 607, 613 (Tex.Crim.App. [Panel Op.] 1980). If the court determines after an informal inquiry that evidence exists to support a finding of incompetency, the court must order an examination to determine whether the defendant is incompetent to stand trial in a criminal case. TEX.CODE CRIM. PROC. ANN. art. 46B.005(a) (Vernon 2006).

### A. Competency Examination

■ Baldwin contends that the trial court should have granted his pre-trial motion for a competency examination because defense counsel presented some evi-

dence of Baldwin's incompetence during the court's informal competency inquiry. During the court's inquiry, defense counsel offered the following evidence of Baldwin's alleged incompetence: (1) against the advice of counsel, Baldwin rejected the State's plea offer of two years imprisonment or ten years of deferred adjudication, even though the fifteen months he had already spent in jail would be credited to his two-year sentence; (2) against the advice of counsel, Baldwin refused to apply for probation; (3) Baldwin received treatment for depression at a local hospital at some point in the past; and (4) he was abused as a child. After a review of the record, we conclude that the court did not abuse its discretion in denying Baldwin's motion for a competency examination. The court acted properly in denying Baldwin's motion because none of the evidence before the trial court was evidence of "incompetence" as that term is statutorily defined. *See* TEX.CODE CRIM. PROC. ANN. art. 46B.003(a) (Vernon 2006). First, a defendant's decisions against the advice of counsel to reject a plea offer and to refuse to apply for probation are not probative evidence of incompetence. *See Johnson v. State,* 564 S.W.2d 707, 711 (Tex.Crim.App.1978) (op. on reh'g), *rev'd on other grounds, Williams v. State,* 663 S.W.2d 832, 834 (Tex.Crim.App.1984) (refusal to apply for probation is valid trial strategy); *Burks v. State,* 792 S.W.2d 835, 840 (Tex.App.-Houston [1st Dist.] 1990, writ ref'd) (defendant's general failure to cooperate with counsel not probative evidence of incompetence). Similarly, neither a history of treatment for depression nor a history of childhood abuse is by itself probative evidence of incompetence. *See Moore v. State,* 999 S.W.2d 385, 395 (Tex. Crim.App.1999) ("A defendant's propensity toward depression does not necessarily correlate with his ability to communicate with counsel or his ability to understand the proceedings against him."); *Baker v. State,* Nos. 05–94–01760–CR, 05–94–01806–CR, 05–94–01804–CR, 05–94–01805–CR, 1996 WL 156899, at *1, *2 (Tex.App.-Dallas March 29, 1996, no writ) (not designated for publication) (testimony that defendant was victim of child abuse, had head injuries, was schizophrenic, and was semi-retarded not evidence of incompetence). To present some evidence of incompetence, Baldwin needed to show that his past depression or childhood abuse somehow interfered with his present ability to communicate with his attorney or with his understanding of the proceedings against him. *See* TEX.CODE CRIM. PROC. ANN. art. 46B.003(a) (Vernon 2006).

█ Although defense counsel raised a concern "as to [Baldwin's] ability to perhaps understand and work with [defense counsel]," he provided no evidence supporting this assertion other than Baldwin's prior depression and childhood abuse, which we have already addressed. A statement that a defendant is or may be incompetent is not by itself sufficient to warrant a competency examination. *McDaniel v. State,* 98 S.W.3d 704, 711 (Tex.Crim.App.2003) (holding that assertion, "I am incompetent," without supporting facts or evidence, is insufficient to require competency hearing). Further, defense counsel informed the trial court that Baldwin was able to assist him in the preparation of the case. Because Baldwin did not provide any evidence that he lacked either the ability to consult with his attorney or an understanding of the proceedings against him, we hold that the trial court did not abuse its discretion in denying Baldwin's motion for a competency examination.

## B. Informal Inquiry

Baldwin contends that the trial court erred in failing to *sua sponte* conduct in-

formal inquiries when evidence suggesting Baldwin's incompetence arose: (1) during the pre-trial proceedings after the court denied his motion for a competency examination; and (2) during the punishment phase of trial.

*Pre-trial*

■ Baldwin points to the following evidence as suggesting his incompetence before trial: (1) he stated at the pre-trial hearing that he wanted time alone without his attorney to consider the State's plea offer; and (2) he ultimately rejected the State's plea offer and refused to apply for probation. Baldwin argues that his wish to be without his attorney when considering the State's offer showed that he lacked a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding. He also argues that his rejection of the State's plea offer and of an application for probation demonstrated his lack of a rational and factual understanding of the proceedings against him. However, Baldwin fails to cite, and we have not located, any authority in support of these propositions. Further, the record shows that after the court informed Baldwin of the risks of going to trial and advised him to consider the State's offer, Baldwin seemed to indicate that he had spoken with his lawyer, that he knew the risks of his decision, and that he simply wanted more time to consider the offer. He stated: "I did tell my lawyer that I did want more time to think about [the State's] offer because, you know, it is a dilemma. It is an attractive offer. There [are] a lot of risks involved. But I did want some time to think about it, but I wasn't give[n] that time." Baldwin stated that he wanted twenty-four hours to consider the offer. The court then asked the State how long it was willing to keep the offer open. The State said it would give Baldwin two more hours and indicated that he had already had two hours to think about it. At that point, Baldwin stated: "I wanted to be removed from the presence of the prosecution and my counsel so that I could be able to think about it without these influences." The Court responded: "Well, I don't have any problem with that."

Throughout these exchanges, Baldwin's statements were relevant and coherent. He appeared to have already discussed the risks of his decision with his lawyer. The fact that he then wanted to be separated from his lawyer in order to make his final decision is not evidence that he lacked the *ability* to consult with his attorney. *See Burks*, 792 S.W.2d at 840 (defendant's general failure to cooperate with counsel not probative evidence of incompetence). Similarly, his decision to refuse to apply for probation against the advice of his lawyer is not evidence that he lacked an understanding of the proceedings against him. *See Johnson*, 564 S.W.2d at 711 (refusal to apply for probation is valid trial strategy); *Burks*, 792 S.W.2d at 840 (defendant's general failure to cooperate with counsel not probative evidence of incompetence). In addition, with respect to the plea offer, the State indicated to the court that the reason Baldwin did not want to accept the offer was that it would require him to register as a sex offender for the rest of his life. Because there was no evidence before the trial court raising the issue of Baldwin's ability to adequately consult with counsel or to understand the proceedings against him, we conclude the evidence did not suggest that Baldwin was incompetent to stand trial. Accordingly, the trial court did not abuse its discretion in not *sua sponte* conducting an informal inquiry into Baldwin's competency when Baldwin requested to be separated from defense counsel, when he refused to apply for probation, or when he rejected the State's plea offer.

*Punishment Phase*

■ Baldwin contends that his "unreasonable and self-destructive" testimony

during the punishment phase of his trial suggested his incompetence to stand trial and required the trial court to *sua sponte* conduct an informal inquiry into his competence. In support of his position, Baldwin cites this court's opinion in *Greene v. State,* No. 04–05–00783–CR, 2007 WL 390309, at *5 (Tex.App.-San Antonio Feb.7, 2007, no pet. h.), in which we held that the defendant's "rambling, nonresponsive" answers to questions and testimony "of the most bizarre quality" suggested his incompetence and required the trial court to conduct an informal inquiry into his competence. In *Greene,* we noted that the defendant's testimony showed that he had confused thoughts and was out of touch with reality when he testified. *Id.* For example, in describing his encounter with the victim, the defendant stated that he "started hallucinating [his] shadows," that he kept hearing voices "telling [him] to smoke a cigarette", and that he "kept thinking they were trying to put their image inside of [him] to control [him] and ... possess [him] or something." *Id.* at *3. He also explained that he bit an officer in a previous assault because "[t]he other cop was telling [him] in his mind to bite [the officer], thinking that [he] was a vampire." *Id.* at *4. In addition to the defendant's bizarre testimony, we also noted that the trial court was on notice that the defendant was on schizophrenia medication and had a long history of mental illness. *Id.* at *5. Here, Baldwin argues that his "rambling, nonresponsive" answers and "damaging" testimony similarly demonstrated his lack of a rational understanding of the proceedings against him. We disagree.

Among the examples cited by Baldwin as evidence suggesting his incompetence are his testimony that he had been convicted of assaulting his wife, that his wife had a restraining order against him because she did not want him near his children, that women gravitated to him, and that the victim (D.M.) and four of her female friends had approached him, told him he was attractive, and decided that D.M. was "the one that should have [him]." Although this and other testimony may have been nonresponsive and damaging, none of it compared to the bizarre, confused testimony found in *Greene.* In fact, much of Baldwin's testimony showed that he not only understood the proceedings against him, but also that he hoped to use his testimony to obtain leniency in sentencing. For example, after testifying that D.M. told him she was seventeen, and that he did not discover she was fourteen until after his sexual encounter with her, Baldwin stated: "And so I would ask the jury because this is—of course, I'm up here giving you testimony for the purpose of requesting leniency from you because I always honestly did feel that I was not guilty." After further testimony about his continued friendship with D.M., he stated:

"But like I said, I would request that you would be lenient with me on punishment because I feel that according to what the indictment says and, you know, there could be different like interpretations of what the definition of intentionally and knowingly is, but I always felt when I saw that indictment that I was innocent because I did not intentionally or knowingly have intercourse with a child because anything that I did with [D.M.], I honestly thought that I was doing that with a person who was, as the prosecution said, able to consent."

Defense counsel then stated: "Now let me ask you, you didn't apply for probation in this case; correct?" Baldwin responded: "Correct. So probation would normally I suppose be the most lenient to be given to me but I don't want to be put on probation. So my—The punishment range for this crime is between two and

twenty years. And so—you know, whatever leniency means to you and whatever you feel is fair, two being the lowest that's possible, I've already been in jail for fifteen months."

Baldwin's testimony showed that he understood the elements of the crime of which he was convicted and the possible sentencing range he faced. It also showed that he could tell his side of the story and argue for leniency in a coherent manner. Although some of his testimony may have been damaging and misguided, none of it suggested that he lacked a rational understanding of the case against him. *See* TEX.CODE CRIM. PROC. ANN. art. 46B.003(a) (Vernon 2006). Accordingly, we hold that the trial court did not abuse its discretion in not *sua sponte* conducting an informal inquiry into Baldwin's competence during the punishment phase of trial.

### CONCLUSION

We affirm the trial court's judgment. Because we affirm, we need not address Baldwin's final issue regarding the proper remedy in the event of reversal.