

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00211-CR
### No. 10-07-00212-CR

**STEVE O'NEAL GREEN,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 272nd District Court
### Brazos County, Texas
### Trial Court Nos. 05-05909-CRF-272 and 07-00573-CRF-272

## MEMORANDUM  OPINION

In cause number 10-07-00211-CR, the trial court revoked Steve O'Neal Green's community supervision and sentenced him to ten years in prison for injury to a child. In cause number 10-07-00212-CR, the trial court found Green guilty of theft and sentenced him to twenty-four months in state jail. The theft charge was a ground for revocation and the trial court heard both causes in a unified proceeding. On appeal, Green's appellate counsel argues that: (1) the trial court failed to conduct an inquiry into Green's competency to stand trial; and (2) Green was denied his right to a jury trial.

Green has also filed a *pro se* supplemental brief raising various points of error. We affirm the judgments as modified.

## Pro Se Pleadings

We first address Green's status as a *pro se* litigant before this court. Both Green and his appointed appellate counsel have filed briefs in this matter.

A criminal appellant has no right to hybrid representation. *Ex parte Taylor*, 36 S.W.3d 883, 887 (Tex. Crim. App. 2001); *Meyer v. State*, 27 S.W.3d 644, 648 (Tex. App.—Waco 2000, pet. ref'd). Generally, when an appellant has counsel and counsel has filed a brief, the appellant has no right to file a *pro se* brief. This prohibition on hybrid representation is not absolute. *See, e. g., Warren v. State*, 98 S.W.3d 739, 741 (Tex. App.—Waco 2003, pet. ref'd). We may consider a *pro se* brief if the interests of justice require us to do so. The State contends that we cannot address Green's *pro se* points because doing so would violate his Sixth Amendment right to counsel.

We have previously considered *pro se* issues in the interest of justice even though an appellant has no right to hybrid representation. *See Williams v. State*, 946 S.W.2d 886, 892 (Tex. App.—Waco 1997, no pet.); *see also Guyton v. State*, 2009 WL 290935, at *2 (Tex. App.—Waco Feb. 6, 2009, pet. granted) (not designated for publication). We will follow our precedent. Having reviewed Green's *pro se* supplemental brief, we find that the interests of justice require us to address his issues raised *pro se*.[1] *See Williams*, 946 S.W.2d at 892; *see also Guyton*, 2009 WL 290935, at *2.

---

[1] By considering Green's *pro se* issues, we do not determine that Green's appointed counsel is ineffective.

**Competency**

In cause numbers 10-07-00211-CR and 10-07-00212-CR, Green's appellate counsel argues that the trial court abused its discretion by failing to conduct an inquiry into Green's competency to stand trial. Green also raises this issue in his *pro se* brief.

On the suggestion that the defendant is incompetent to stand trial, "the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. ANN. art. 46B.003(c) (Vernon 2006). "If after an informal inquiry the court determines that evidence exists to support a finding of incompetency, the court shall order an examination under Subchapter B to determine whether the defendant is incompetent to stand trial in a criminal case." *Id.* art. 46B.005(a).

> In *Pate v. Robinson*, [383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)] Illinois conceded that "the conviction of an accused person while he is legally incompetent violates due process, and that state procedures must be adequate to protect this right." [*Id.* at 378, 86 S.Ct. 836.] The Supreme Court went on to determine that "where the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial, the judge on his own motion must impanel a jury and conduct a sanity hearing." [*Id.* at 385, 86 S.Ct. 836.] Under Texas law, a defendant is incompetent to stand trial if he does not have "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against" him. [Art. 46B.003.] A bona fide doubt is "a real doubt in the judge's mind as to the defendant's competency." *Alcott v. State,* 51 S.W.3d 596, 599, n. 10 (Tex. Crim. App. 2001).] Evidence raising a bona fide doubt "need not be sufficient to support a finding of incompetence and is qualitatively different from such evidence." [*Id.*] Evidence is sufficient to create a bona fide doubt if it shows "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant." [*McDaniel v. State,* 98 S.W.3d 704, 710 (Tex. Crim. App. 2003).] If any evidence that suggests the defendant may be incompetent to stand trial comes to the trial court's attention, the trial court shall sua sponte "suggest that the defendant may be incompetent to

> stand trial" and then "determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." [Art. 46B.004.]

*Fuller v. State*, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008) (citations in footnotes in original).

If the evidence raises a bona-fide doubt about a defendant's competence, the trial court must conduct a competency inquiry.[2] *See Fuller*, 253 S.W.3d at 228. We review a trial court's decision not to conduct a competency inquiry or hearing for an abuse of discretion. *See Moore v. State*, 999 S.W.2d 385, 395-96 (Tex. Crim. App. 1999).

According to the pre-sentence investigation report, Green had been admitted to Austin State Hospital on several occasions and periodically treated by MHMR since 1996. Green had attempted suicide on several occasions. His current diagnosis was schizoaffective disorder, personality disorder, and mild mental retardation. Green was taking medication. The community supervision order states that Green suffers from a "documented mental illness" and is a "mentally impaired offender."

Community supervision officer Angela Sullivan testified that Green was being seen by an MHMR doctor while in jail. Sullivan also met with Green to discuss his medication, any concerns, and the case. Green was receptive and cooperative. Some

---

[2] Citing *Green v. State*, 225 S.W.3d 324 (Tex. App.—San Antonio 2007, pet. ref'd), Green's counsel argues that the "bona-fide doubt" standard no longer applies. *Green* holds that, unlike the former statute, article 46B.004 "uses the terms 'suggest' and 'suggestion' with regard to when a court must conduct a competency inquiry;" thus, it is no longer necessary that the record "contain evidence raising a 'bona-fide doubt.'" *Id.* at 329 n.3; *compare* TEX. CODE CRIM. PROC. ANN. 46B.004 (Vernon 2006) (current statute) *with* Act of May 29, 1975, 64th Leg. R.S., ch. 415, 1975 TEX. GEN. LAWS 1095-96, *repealed by* Acts of April 30, 2003, 78th Leg. R.S., ch. 35 § 15, 2003 TEX. GEN. LAWS 57, 72 (former statute). But both we and the Court of Criminal Appeals have continued using the bona-fide doubt standard. *See Fuller v. State*, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008); *Walker v. State*, 2006 WL 1350173, at *2 (Tex. App.—Waco May 17, 2006, no pet.) (mem. op.) (not designated for publication).

days were better than others.  Green sometimes had "rapid speech," jumped from "subject to subject," and refused medication.  Sullivan and Green had discussed his need for medication in order to comply with community supervision.  Sullivan opined that it would be difficult for Green to comply without taking medication.  Green's mental health was a concern to Sullivan, who knew that Green had previously been admitted to Austin State Hospital.

Green answered the trial court's questions without difficulty.  He understood that the State had filed a motion to revoke, and he understood the revocation allegations.  He also understood the theft allegations.  He declined the reading of the allegations for either case.  He understood his right to a jury trial and indicated his satisfaction with his attorney's representation.  During his testimony, Green appeared to adequately understand and respond to questions from both defense counsel and the State.  He testified that he has had emotional, psychological, and psychiatric issues, has been to Austin State Hospital several times, and was diagnosed with severe depression.  He has taken several different medications.  He said he had improved, although the theft charge added to his stress, but he would "be all right."  He was still seeing a doctor, but his medications were constantly changing.  He complained that he was taken off medication after a disciplinary action was filed against him for hording medication, and he had been placed on a new medication that did not "agree[] with [his] system," causing loss of appetite and depression.  He admitted having verbal disputes with the jailers.  Before being arrested, Green held a job and was drawing SSI.  Green made several brief outbursts throughout the bench trial.

The trial court noted that Green is "mildly retarded" but "seem[ed] very able to speak, form complete sentences, and grasp complicated concepts." "[Y]ou've not -- as far as I can tell, been found incompetent to stand trial before and I don't have anything before me that insanity was ever raised as a defense and, from what I can see, I can see why it wasn't." The trial judge noted his prior concerns with ordering community supervision because the State had represented that Green was uncooperative and the case might be difficult to prosecute. When the trial court assessed punishment, Green responded, "I can't do that man."

Appellate counsel argues that Green's competence is questionable because of his (1) mental illness, status as a mentally impaired offender, treatment, medication, commitment to a state hospital, and lack of both treatment and medication before trial; and (2) Green's inappropriate outbursts during trial. But mental impairment alone does not establish Green's inability to consult with counsel or understand the proceedings against him. *See Moore*, 999 S.W.2d at 395; *see also Perez v. State*, 130 S.W.3d 881, 887-88 (Tex. App.—Corpus Christi 2004, no pet.) (although above *mildly* retarded range, defendant was not *moderately* retarded); *Reeves v. State*, 46 S.W.3d 397, 400 (Tex. App.—Texarkana 2001, pet. dism'd) (evidence of suicide attempts does not reflect on defendant's "ability to understand or participate in the proceedings"); *Grider v. State*, 69 S.W.3d 681, 684-85 (Tex. App.—Texarkana 2002, no pet.) (evidence did not show that paranoid schizophrenic's taking medication, hearing voices, and seeing visions was incompetent). Neither do Green's outbursts, although "inappropriate violations of court decorum," evidence an "inability to communicate with counsel, or factually

appreciate the proceedings against him." *Moore*, 999 S.W.2d at 395. Green's outbursts were "timely, topical, and logically related" to what was occurring at trial. *Id*. If "unruly and disruptive courtroom demeanor" was "probative of incompetence, one could effectively avoid criminal justice through immature behavior." *Id*.

In summary, the record does not demonstrate that Green suffers from an impairment that prevented him from having the "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against [him]." TEX. CODE CRIM. PROC. ANN. art. 46B.003(a). The record does not contain sufficient evidence of any recent severe mental illness, bizarre acts, or moderate retardation. *See Fuller*, 253 S.W.3d at 228. Because the evidence does not raise a bona-fide doubt about Green's competence, the trial court did not abuse its discretion by failing to conduct a competency inquiry. *See Grider*, 69 S.W.3d at 685. We overrule the first issue in cause numbers 10-07-00211-CR and 10-07-00212-CR and Green's *pro se* incompetency issue.

**Jury Waiver**

In cause number 10-07-00212-CR, appellate counsel's second issue addresses whether Green's right to a jury trial was denied because of the absence of a written jury waiver. Green also raises this issue in his supplemental brief.

Waiver of the right to a jury trial "must be made in person by the defendant in *writing* in open court with the consent and approval of the court, and the attorney representing the State." TEX. CODE CRIM. PROC. ANN. art. 1.13(a) (Vernon 2005) (emphasis added). Absence of a written waiver in the record constitutes statutory error

subject to a harmless-error analysis. *See Johnson v. State*, 72 S.W.3d 346, 348 (Tex. Crim. App. 2000); TEX. R. APP. P. 44.2(b).

Although the record contains no written jury waiver, at both arraignment and trial, Green acknowledged on the record that he had requested a bench trial. *See Jackson v. State*, 76 S.W.3d 798, 802-03 (Tex. App.—Corpus Christi 2002, no pet.). At both proceedings, Green responded affirmatively to the trial court's inquiries about whether he understood his right to a jury trial and wished to waive that right. Thus, the record indicates that Green was both aware of and waived his right to a jury trial. *See Ford v. State*, 2008 WL 4743498, at *1-2 (Tex. App.—Dallas Oct. 30, 2008, no pet.) (mem. op.) (not designated for publication). Appellate counsel maintains that the oral waiver was not knowingly and voluntarily made due to Green's incompetence, but we have already found that the record does not create a bona-fide doubt on Green's competence.

Moreover, the judgment states that a jury trial was waived. We are bound by this recitation "in the absence of direct proof of [its] falsity." *Johnson*, 72 S.W.3d at 349. Green does not challenge the recitation in the judgment, and the record contains no evidence of falsity. *See Jackson*, 76 S.W.3d at 802. The trial court's failure to obtain a written jury waiver did not affect Green's substantial rights. *See Johnson*, 72 S.W.3d at 349; *see also Jackson*, 76 S.W.3d at 803. We overrule issue two in cause number 10-07-00212-CR.

## Pro Se Issues

Green raises the following issues in his supplemental brief: (1) the evidence is factually insufficient to support his theft conviction; and (2) the judgment erroneously

states that he pleaded "guilty" to theft and pleaded "true" to the motion to revoke.

### *Factual Sufficiency*

Timothy Martinez and Trevor Maurer were delivering cases of beer to a store when they observed a man removing a full case of beer from the delivery truck. Maurer had closed the bay before carrying a load inside the store, but the bay had been partially opened. When they spoke to the man, he left the beer behind and fled. Martinez testified that the case of beer was worth $22 or $23. Upon arriving at the scene, Officer David Long saw a man matching the suspect's description standing in the parking lot. The man told Long that he was "hanging around." After Martinez and Maurer identified the man as the thief, Long again approached him and identified him as Green. Green denied taking any beer and claimed to be watching the truck to prevent someone from stealing the beer. Both Martinez and Maurer identified Green at trial.

A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PEN. CODE ANN. § 31.03(a) (Vernon Supp. 2008). "Appropriate" means to acquire or otherwise exercise control over property other than real property. *Id.* § 31.01(4)(B) (Vernon Supp. 2008).

Both Martinez and Maurer observed that the closed bay had been opened and Green was removing a case of beer from the delivery truck. Although the case of beer was not actually taken, "asportation—the act of carrying away or removing property— is not an element of statutory theft." *Hawkins v. State*, 214 S.W.3d 668, 670 (Tex. App.— Waco 2007, no pet.) (defendant picked up roll of barbed wire but dropped it and fled when spotted by employee; evidence was legally and factually sufficient to support

theft even though defendant did not successfully steal wire.). Moreover, the trial court was entitled to disregard Green's claim that he was merely watching the truck to prevent theft of the beer. *See Winkley v. State*, 123 S.W.3d 707, 711-12 (Tex. App.—Austin 2003, no pet.). The proof of guilt is not so weak nor the conflicting evidence so strong as to render the jury's verdict clearly wrong or manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). The evidence is factually sufficient to sustain Green's conviction. We overrule Green's first supplemental issue.

### Typographical Errors

At the bench trial, Green pleaded "not true" to the allegations in the motion to revoke and pleaded "not guilty" to the theft offense, yet the judgments state that Green pleaded "guilty" to theft and "true" to the motion to revoke.

The oral pronouncements in the record control over the written judgment. *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004). The solution in those cases in which the oral pronouncement and the written judgment conflict is to reform the written judgment to conform to the sentence that was orally pronounced. *Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003); *see* TEX. R. APP. P. 43.2(b). We, therefore, sustain Green's second supplemental point, reform the judgment in cause number 10-07-00211-CR to reflect that Green pleaded "not true" to the motion to revoke, and reform the judgment in cause number 10-07-00212-CR to reflect that Green pleaded "not guilty" to the theft offense.

The trial court's judgments are affirmed as modified.


                                              REX D. DAVIS
                                              Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
        (Chief Justice concurs with a note)*
Affirmed as modified
Opinion delivered and filed June 24, 2009
Do not publish
[CR25]


        *(Chief Justice Gray joins no part of the Court's opinion and specifically disapproves of allowing hybrid representation.  A separate opinion will not follow.  He notes, however, that he disagrees with the implied determination that appointed appellate counsel is so ineffective that in the interest of justice it is necessary to allow hybrid representation which has been uniformly condemned by the Court of Criminal Appeals and is certainly unnecessary in this instance because its consideration does not impact the substance of the trial court's judgment.  I would simply affirm the trial court's judgment.  Because the Court effectively does that, I concur in the substance of the judgment.)