**Opinion filed February 7, 2019**



# In The

# Eleventh Court of Appeals

_____

## No. 11-17-00131-CR

_____

## TREVOR AARON BAUGH, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**

**Midland County, Texas**

**Trial Court Cause No. CR48163**

## M E M O R A N D U M   O P I N I O N

The grand jury indicted Trevor Aaron Baugh for the offense of aggravated robbery. After a trial on the merits, the jury found Appellant not guilty of aggravated robbery, but it found Appellant guilty of the lesser included offense of robbery. At the conclusion of the punishment phase of the trial, the jury found two enhancement paragraphs to be true and assessed Appellant's punishment at confinement for forty-five years. In his sole issue on appeal, Appellant contends that the trial court erred when it failed to sua sponte conduct an informal inquiry into his competency to stand trial. We affirm.

In the indictment, the State alleged that Appellant threatened a Walmart employee and placed him in fear of imminent bodily injury and death, by using and exhibiting a deadly weapon, namely a knife, while Appellant committed theft from Walmart and the Walmart employee. On appeal, Appellant does not challenge the sufficiency of the evidence to support his conviction. Thus, we will limit our discussion of the facts to the issue of whether Appellant was competent to stand trial.

After he had consulted with both of his attorneys, Appellant elected to testify at trial. Before he testified, the trial court thoroughly admonished Appellant about his Fifth Amendment right against self-incrimination. During the trial court's questioning, Appellant stated that he understood he had a right to remain silent and that he understood the advantages and disadvantages of his decision to testify. Appellant also stated that he had had sufficient time to consult with his attorneys about the subject and that he wanted to voluntarily waive his right to remain silent.

During this part of the trial, the trial court also questioned Appellant about his educational level and about his technical job training. In addition, the trial court asked Appellant whether he had recently (i.e., within the last twenty-four hours) consumed alcohol or taken any controlled substances. Appellant responded that he had not. The trial court also asked Appellant whether he had recently taken any prescription or over-the-counter medication; Appellant responded: "Yes, sir." Appellant stated that he had taken Prozac, hydroxyzine, and Buspar.

Appellant further explained that he was currently under the care of Dr. Strobel, a psychiatrist. Appellant stated that Dr. Strobel prescribed the medications and that jail personnel administered the medicine. The following exchange occurred between the trial court and Appellant:

> THE COURT: Is there anything about that medication that you take that affects your ability to think and concentrate in these proceedings?

> THE DEFENDANT: Not to my knowledge, no, sir.

2

THE COURT: Do you believe that you have been able to understand all of the proceedings that were held yesterday and today to this point?

THE DEFENDANT: Most -- for the most part, yes, sir.

THE COURT: Have you had an opportunity to consult with either of your attorneys to ask them questions about any aspect of the proceeding, either yesterday or today?

THE DEFENDANT: Absolutely.

Next, the trial court asked Appellant whether he had ever been confined in a mental health facility. Appellant replied: "[Y]es, sir." Appellant explained that he had been committed when he was a child, about fifteen or sixteen years ago. The record reflects that Appellant was twenty-eight years old at the time of trial. The trial court then questioned Appellant about whether he believed that anything from his prior hospitalization or confinement as a child affected his "ability to understand these proceedings or to think and concentrate today." Appellant responded: "From my knowledge, no, sir."

After the trial court questioned Appellant, the trial court asked Appellant's trial counsel about Appellant's statements:

THE COURT: Okay. [Defense Counsel], does the fact that your client wishes to give up his right to remain silent, take the oath and testify today meet with your approval?

[DEFENSE COUNSEL]: Yes, Your Honor. After speaking with [Appellant], I have informed him of the consequences of taking it and not taking it that he's asked me.

THE COURT: Okay. In your opinion, is [Appellant] competent to testify at this point in time?

[DEFENSE COUNSEL]: Yes, Your Honor, [Appellant] is competent.

After the trial court completed its admonishment of Appellant, it concluded that it "[would] approve of [Appellant] giving up [his] right to remain silent, taking

3

the oath and testifying in this proceeding." The trial court further declared that it was its opinion that Appellant was "doing so freely and voluntarily, with the consent of counsel."

After Appellant testified on direct examination, the State conducted a voir dire examination of Appellant, outside the presence of the jury, during its cross-examination. The State's voir dire examination was based on Appellant's testimony on direct examination that he had heard someone call his name as he left Walmart and headed to his pickup in the parking lot. Specifically, Appellant testified that he heard someone say: "Don't do this, Trevor." Appellant's answer apparently prompted the State to question Appellant about his mental health history. Appellant testified that, at the time of trial, he was taking medication for and had been diagnosed with the following conditions: "[m]anic depressi[on], bipolar, schizophreni[a], and just ADAD [sic] and ADHD." Appellant stated that he began taking medication only after his current incarceration began and that he was not on medication during the incident at Walmart. Appellant explained that he did not take any medication for "approximately five years prior to" his arrest for the offense with which he is charged in this case. Appellant also denied that he had heard voices in his head on the day of the incident and clarified that he had heard an actual person call his name.

We review a trial court's decision not to conduct an informal competency inquiry into a defendant's competency to stand trial for an abuse of discretion. *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009), *superseded by statute on other grounds as stated in Turner v. State*, 422 S.W.3d 676, 692 & n.31 (Tex. Crim. App. 2013); *see also Luna v. State*, 268 S.W.3d 594, 599–600 (Tex. Crim. App. 2008). A trial court does not abuse its discretion absent a showing that its decision was arbitrary or unreasonable. *Montoya*, 291 S.W.3d at 426. When we determine whether the trial court has abused its discretion, we do not substitute our

4

own judgment for that of the trial court; instead, we determine whether the trial court's decision was arbitrary or unreasonable. *Id.* A trial court's firsthand factual assessment of a defendant's competency is entitled to great deference on appeal. *Ross v. State*, 133 S.W.3d 618, 627 (Tex. Crim. App. 2004).

"As a matter of constitutional due process, a criminal defendant who is incompetent may not stand trial." *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018); *Turner*, 422 S.W.3d at 688. The legislature has codified this due-process requirement to ensure that legally incompetent criminal defendants do not stand trial. *See* TEX. CODE CRIM. PROC. ANN. arts. 46B.003–.005 (West 2018). A person is presumed to be competent and the burden is on the criminal defendant to prove incompetency by a preponderance of the evidence. *Id.* art. 46B.003(b). Substantively, incompetency to stand trial is shown if the defendant does not have "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." *Id.* art. 46B.003(a). Procedurally, a trial court employs two steps for making competency determinations before it may conclude that a defendant is incompetent to stand trial. The first step is an informal inquiry; the second step is a formal competency trial. *Id.* arts. 46B.004–.005.

An informal inquiry is called for when there is a "suggestion" from any credible source that the defendant may be incompetent. *Id.* art. 46B.004(a), (c), (c-1). "Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(a). Upon such a suggestion, the trial court must undertake an informal inquiry to determine whether there is "some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *See id.* art. 46B.004(c). However, an informal inquiry is not required unless the trial

court observes or is presented with evidence suggesting incompetency. *See id.* art. 46B.004(c-1).

"Evidence suggesting the need for an informal inquiry may be based on observations made in relation to one or more of the factors described by Article 46B.024 or on any other indication that the defendant is incompetent within the meaning of Article 46B.003." *Id.* art. 46B.004(c-1). These factors include the defendant's capacity during criminal proceedings to (a) rationally understand the charges against him and the potential consequences of the pending criminal proceedings; (b) disclose to counsel pertinent facts, events, and states of mind; (c) engage in a reasoned choice of legal strategies and options; (d) understand the adversarial nature of criminal proceedings; (e) exhibit appropriate courtroom behavior; and (f) testify. *Id.* art. 46B.024(1). Additional considerations include whether the defendant suffers from mental illness and, if so, what impact it has on the defendant's capacity to reasonably and rationally participate in his own defense. *See id.* art. 46B.024.

Appellant contends that the trial court should have sua sponte conducted an informal competency inquiry based on the following evidence: (1) Appellant suffered from "a variety of [mental] conditions, including schizophrenia"; (2) he "went through a five-year period without medication until his arrest"; (3) he "did not understand all of the proceedings"; and (4) Appellant's "answers to questions were somewhat bizarre and non-responsive." We disagree.

We conclude that the evidence in this case did not suggest that Appellant was incompetent to stand trial and, thus, did not trigger the trial court's duty to conduct an informal inquiry. With respect to Appellant's first two assertions as to why an informal inquiry was required, we note that "[t]he fact that a defendant is mentally ill does not by itself mean he is incompetent." *Turner*, 422 S.W.3d at 691. A defendant's mental illness—absent credible evidence that, because of it, he lacks the

ability to rationally consult with his attorney or rationally and factually understand the proceedings against him—"does not equate to a suggestion of incompetency." *Dusenbery v. State*, No. 02-16-00125-CR, 2018 WL 4025078, at *9 (Tex. App.—Fort Worth Aug. 23, 2018, pet. dism'd, untimely filed) (mem. op., not designated for publication) (quoting *Moore v. State*, No. 02-15-00381-CR, 2016 WL 4474354, at *4 (Tex. App.—Fort Worth Aug. 25, 2016, no pet.) (mem. op., not designated for publication)).

Here, nothing in the record suggests that Appellant's mental illness and lack of medication for a five-year period before his arrest rendered Appellant incapable of rationally consulting with his attorneys or rationally and factually understanding the proceedings against him. Rather, the record reflects that, although Appellant took medication for various mental conditions at the time of the trial, Appellant understood the nature and consequences of the proceedings against him, was able to consult with his attorneys and engage in a reasoned choice of legal strategies and options, exhibited appropriate courtroom behavior, and clearly answered the trial court's questions. Therefore, evidence of Appellant's mental illness and former lack of medication did not constitute evidence of his incompetency.

With respect to Appellant's third assertion, Appellant contends that an informal inquiry was required because Appellant did not understand *all* the proceedings against him. To support this argument, Appellant asserts that he responded: "[F]or the most part, yes, sir," to the trial court's inquiry about whether Appellant understood "all of the proceedings" against him. While Appellant did not unequivocally express that he understood all of the proceedings against him, we conclude that the record does reflect that Appellant had "a rational [and] factual understanding of the proceedings against [him]." CRIM. PROC. art. 46B.003(a).

Here, the record shows that Appellant understood the charge against him and understood the adversarial nature of the proceedings. Appellant also understood that

he had a right to remain silent and understood the consequences of his decision to testify. Further, Appellant informed the trial court that he "[a]bsolutely" had the opportunity to ask his attorneys "about any aspect of the proceeding[s]," and his trial counsel confirmed that Appellant did make such inquiries, specifically regarding Appellant's decision to testify. In addition, Appellant stated that the medication he was taking at the time of trial did not affect his ability to think and concentrate during the trial. Appellant also informed the trial court that his ability to understand the proceedings against him was not affected by his history of mental illness. Moreover, when the trial court asked Appellant's trial counsel whether Appellant was currently competent to stand trial, trial counsel stated: "Yes, Your Honor, [Appellant] is competent." Thus, nothing in the proceedings below suggested that Appellant was unable to rationally and factually understand the proceedings against him.

Even if we were to hold that an informal inquiry was required after Appellant responded that he understood the proceedings against him "for the most part," we conclude that the trial court essentially conducted an informal competency inquiry during its admonishment of Appellant regarding his Fifth Amendment right against self-incrimination. An informal inquiry may be satisfied when the trial court poses simple, short questions to the defendant or defense counsel regarding the defendant's competency—exhaustive inquisitions are not required. *See Coyt–Sowells v. State*, No. 14-11-00986-CR, 2013 WL 1499579, at \*1 (Tex. App.—Houston [14th Dist.] Apr. 11, 2013, no pet.) (mem. op., not designated for publication) (citing *Luna*, 268 S.W.3d at 599–600).

Here, the trial court posed such questions to both Appellant and his trial counsel. Specifically, after Appellant stated that he understood the proceedings against him "for the most part," the trial court asked Appellant whether he had had the opportunity to consult with either of his attorneys about any aspect of the proceedings against him, whether he had a history of mental illness, and whether he

believed his history of mental illness affected his ability to currently understand the proceedings against him or to think and concentrate. Additionally, the trial court questioned Appellant's trial counsel about Appellant's decision to testify and asked trial counsel whether he believed Appellant was currently competent to stand trial. The answers to these questions show that Appellant was competent to stand trial.

Finally, with respect to Appellant's fourth assertion, he contends that his "somewhat bizarre and non-responsive" answers served as a basis for the trial court to inquire into his competency. To support this argument, Appellant cites to the following six examples: (1) during direct examination, when Appellant's trial counsel asked Appellant whether he remembered seeing Rennetta Lambert (an asset-protection associate who testified for the State) at Walmart, Appellant initially testified that he did, but later stated that the Rennetta Lambert who testified earlier "didn't even look like the woman that [he] had seen"; (2) when Appellant's trial counsel asked whether Appellant recalled hearing the testimony of Brendan Hinojos (another asset-protection associate at Walmart), Appellant testified that he heard "a few of his testimonies"; (3) when the prosecutor asked Appellant why the FM radio transmitter (the object Appellant was charged with stealing) caught his attention, "Appellant's response did not answer the question";[1] (4) on cross-examination, in response to two other questions about Appellant's actions in the store, Appellant responded "by telling the prosecution they watched the same surveillance videos he did"; (5) Appellant "attempted to make his own [relevancy] objection" in response to a question on cross-examination; and (6) although Appellant testified that he heard someone say: "Don't do this, Trevor," as he walked out of Walmart, when asked who made the statement, Appellant could not identify the person, and Appellant

---

[1] In response to this question, Appellant stated: "Just like I stated on the record before, I opened the box and handed it off." Appellant testified that he handed it off to the person that accompanied him to Walmart on the day in question.

admitted that it could not have been "his accomplice, Hinojos, or Lambert" or any other "third party near the scene."

We conclude that Appellant's responses to these questions do not suggest that Appellant was incompetent to stand trial. The fact that Appellant could not identify a witness as the person whom he saw at Walmart, apparently misspoke or used incorrect grammar, refused to answer some questions to the prosecutor's liking during cross-examination, and could not identify the person that called after him as he left Walmart does not constitute evidence that Appellant was unable to rationally consult with his attorneys or rationally and factually understand the proceedings against him. CRIM. PROC. art. 46B.003(a). To the contrary, Appellant's responses, in particular his responses on cross-examination, were indicative of a rational and factual understanding of the proceedings against him. Specifically, Appellant's testimony showed that he was able to comprehend the prosecutor's questions and respond in a manner that Appellant believed would further his defense. Indeed, Appellant attempted to minimize his involvement in the crime when he claimed that all he did was open the box and hand the radio transmitter to the person that accompanied him. Furthermore, Appellant decided not to answer select questions that he believed were apparent from the evidence already admitted or not relevant to the charged offense. Moreover, with respect to Appellant's suggestion on appeal that his testimony indicated that he was hearing voices, the record reflects that Appellant maintained at trial that he was not hearing voices in his head but, rather, that he heard an actual, unidentified person call his name. Accordingly, the trial court did not abuse its discretion by failing to conduct an informal inquiry based on this evidence.

Appellant also argues that an informal inquiry was required in this case because "[t]he facts surrounding Appellant's case are similar" to the facts of *Greene v. State*, where the San Antonio Court of Appeals held that the trial court

10

erred by failing to conduct an informal inquiry. 225 S.W.3d 324, 329 (Tex. App.—San Antonio 2007, no pet.). We disagree.

In *Greene*, the court of appeals concluded that the defendant's "rambling, nonresponsive" answers to questions and testimony "of the most bizarre quality" suggested that he was incompetent to stand trial. *Id.* at 329. There, the court of appeals noted that Greene's testimony showed that he had confused thoughts and was out of touch with reality when he testified. *Id.* At trial, Greene testified that, on the day of the incident, he "started hallucinating [his] shadows"; he emphasized that he was hearing voices, which were "telling [him] to smoke a cigarette the whole time." *Id.* at 326–27. Greene also stated that he "kept thinking they were trying to put their image inside of [him] to control [him] and . . . possess [him] or something." *Id.* at 327. Greene further explained that he bit an officer in a previous assault because "[t]he other cop was telling [him] in his mind to bite [the officer], thinking [he] was a vampire." *Id.* at 328.

In addition to Greene's bizarre testimony, the court of appeals noted that the defendant was on schizophrenia medication and had a long history of mental illness. *Id.* at 329. Greene's testimony established that he had recently been institutionalized because "he was hearing voices and having a vision that he had a twin who would not leave him alone." *Id.* at 326. Moreover, Greene testified that he understood that he had been accused of "something" and relayed that he "somewhat" understood "the role of defense counsel, the prosecution, judge, and jury." *Id.* at 327. Greene also told the jury that he thought he was insane. *Id.* When asked whether insanity is a defense in his case, Greene stated, "I have no clue." *Id.*

We conclude that the circumstances described in *Greene* bear little resemblance to those present in this case. Unlike in *Greene*, the record before us does not show that Appellant provided rambling or bizarre testimony. Nor does Appellant's testimony show that he was confused or out of touch with reality when

11

he testified. At trial, Appellant denied that he had heard voices on the day of the incident. Although at the time of trial Appellant was taking medication for his mental illness, Appellant testified that the medication did not affect his ability to think and to concentrate during the proceedings. Moreover, there was no evidence to suggest that Appellant had recently been institutionalized prior to the commission of the present offense, and his trial counsel confirmed that Appellant was competent to stand trial. Indeed, Appellant's behavior at trial suggested that he understood the crime for which he was charged, that he was able to rationally consult with both his attorneys, and that he had a rational and factual understanding of the proceedings against him. Accordingly, we conclude that *Greene* does not compel us to make a similar holding.

In the alternative, Appellant asserts that, if this court determines that the trial court's admonishment of Appellant about his right to remain silent constituted an informal competency inquiry, "the trial court should have stayed the proceedings and ordered an examination" under Article 46B.005(a) of the Texas Code of Criminal Procedure. Article 46B.005(a) contains the following provision: "If after an informal inquiry the court determines that evidence exists to support a finding of incompetency, the court shall order an examination under Subchapter B to determine whether the defendant is incompetent to stand trial in a criminal case." CRIM. PROC. art. 46B.005(a) (footnote omitted). Because we have already determined that an informal inquiry into Appellant's competency was not warranted, and to the extent that it was required, the trial court conducted the inquiry and found no evidence to support a finding of incompetency, we conclude that the trial court was not required to order a mental examination.

Accordingly, based on the record before us, we hold that the trial court did not abuse its discretion when it did not, sua sponte, conduct an informal inquiry into

Appellant's competency beyond the inquiry that the trial court made during its admonishment.  We overrule Appellant's sole issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT

SENIOR CHIEF JUSTICE


February 7, 2019

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.